**TEXAS INSTRUMENTS INC., Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**C.D. 4811; Court No. 77–4–00579.**

United States Customs Court.

June 29, 1979.

Frederick L. Ikenson, Washington, D. C., for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (David M. Cohen, Director, Commercial Litigation Branch, New York City; Sheila N. Ziff, Trial Atty., New York City), for defendant.

BOE, Judge:

The within proceeding is a companion case to the cause of action entitled *Texas Instruments Inc. v. United States,* Cust.Ct., 475 F.Supp. 1183. Pursuant to the stipulation of respective counsel, the entire record thereof has been incorporated in the instant proceeding.

The imported merchandise in issue, described on the relevant invoices as "DIS 611" with or without other descriptive information, was imported by the plaintiff from Taiwan and entered at Dallas/Forth Worth, Texas, on June 15, 1976.

The District Director of Customs at Houston, Texas, classified the said merchandise as watch dials under item 720.40, TSUS, as modified by T.D. 68–9, providing:

Dials and parts thereof:

Watch and clock dials:

720.40      Under 1.77 inches in width    1.2¢ each + 22.5% ad val.

The plaintiff claims that the subject merchandise should be classified under item 685.70, TSUS, as modified by T.D. 68–9, as electrical indicator panels or electrical visual signalling apparatus, providing:

685.70   Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus, all the foregoing which are electrical, and parts thereof . . . . . 4% ad val.

At the time of trial of the within action, respective counsel with the approval of the court entered into the following stipulations:

(1) The entire record in the case of Texas Instruments Incorporated versus the United States, Customs Court No. 77–4–00580, may be incorporated herein.

(2) The official entry papers may be received in evidence as an unmarked exhibit.

(3) The imported merchandise is designated on the relevant invoice as DIS–611, with or without other descriptive information.

(4) The imported merchandise is made with "W–70" bars.

(5) Plaintiff's Exhibit 25 for Identification is a representative sample of the imported merchandise, and may be received in evidence.

(6) There is no colon on Plaintiff's Exhibit 25 for Identification.

(7) The imported merchandise was manufactured in about May 1976.

(8) The imported merchandise comes within the description of electrical indicator panels.

(9) The imported merchandise comes within the description of electrical visual signalling apparatus. [R. 3–4.]

In the consideration of the instant proceeding, it must be acknowledged initially that a solid-state digital watch in which the subject merchandise is an incorporated part is a device by which time is transmitted and made discernible to the human eye. The issue presently before this court is restricted to a determination as to whether the imported merchandise, represented by Plaintiff's Exhibit 25, is a dial of a watch within the purview of item 720.40, TSUS. The court concludes from the evidence presented that the classification determined by the District Director of Customs is in error and, accordingly, cannot be affirmed.

■ Headnote 1 to Subpart E, Part 2, Schedule 7, Tariff Schedules of the United States, provides:

*Subpart E headnotes:*

1. This subpart covers watches and clocks, time switches and other timing apparatus with clock or watch movements, and parts of these articles. This subpart, however, does not cover—* * *.

From the foregoing it is clear that in the subsequent schedules provided for thereunder and as a prerequisite to their respective classifications, only "parts" of watches possessing a "watch movement" are included. Thus, in order for the subject merchandise to be classified as a dial under the provisions of item 720.40, TSUS, the article to which it is alleged to be a part must be determined in the first instance to be a watch within the meaning of the aforequoted headnote, i. e., a watch possessing a "movement."

The headnotes of subpart E define the terms "watch movement" and "clock movement":

2. For the purposes of this subpart—

    *      *      *      *      *      *

(b) the term *"watch movement"* means a timepiece movement measuring less than 1.77 inches in width and less than 0.50 inch in thickness;

(c) the term *"clock movement"* means any movement or mechanism, other than "watch movements" as defined in headnote 2(b), above, intended or suitable for measuring time;

■ In the companion case of *Texas Instruments Inc. v. United States,* Cust.Ct. 475 F.Supp. 1183, the record of which is incorporated herein, this court has determined that the solid-state digital watch (and the module contained therein of which the present merchandise in question is a "part") does not incorporate the transfer of any physical or mechanical motion among its component parts and, accordingly, does not possess a "timepiece movement" within the intendment of the appropriate tariff schedules. A more detailed reiteration of the court's reasoning set forth with particularity in the companion case is deemed unwarranted. Suffice it to merely add, that the subject merchandise, irrespective of its nature, shape or function, cannot be classified as a "part" of a watch within the intendment of the headnote to subpart E in the absence of a preliminary determination and finding that the watch, of which it is a "part," possesses a "timepiece movement." Accordingly, this court deems that its decision in the case of *Texas Instruments Inc. v. United States,* Cust.Ct., 475 F.Supp. 1183, is determinative of and serves to sustain plaintiff's claim in the within proceeding that the classification of the subject merchandise under item 720.40, TSUS, is in error.

In directing our attention to plaintiff's claim that the imported merchandise should be classified under item 685.70, TSUS, it is proper that brief consideration be given to its essential nature and composition. The article, described as a visible light emitting diode (referred to as VLED), is manufactured by a process similar to which a monolithic integrated circuit chip is constructed.[1] On a slice of semiconductor material known as gallium arsenide or phosphide, a series of minute chips are defined and "junctions"

formed therein by means of an aluminum metalization process. The chips, each approximating the size of the head of a pin, are separated into discrete entities, also referred to as a "bar."

From the unrebutted testimony of professional engineering witnesses, it has been established that all visible light emitting diodes, including the merchandise in question, are constructed in an identical manner. The basic component of a diode is the monolithic chip or bar which has been processed in the manner hereinbefore described. The number of chips or bars, which may be required for the purposes desired, are bonded upon a ceramic substrate through the use of a conductive epoxy. After the attachment of fine gold wires providing a connection between the chip and the substrate, a lens is molded over the respective chips for the purpose of providing magnification as well as protection from the environment. Through the electric currents and impulses provided by the integrated circuit chip within the watch module, the seconds, minutes and hours counted therein are translated into a visual numerical display in the light emitting diode of the solid-state watch.

The testimony adduced herein further reveals that visible light emitting diode displays are used for multiple purposes. Such displays are utilized in: CB radios, TV channel indicators, calculators, clocks, watches, microwave ovens, coffee pots, memory calendars, voltmeters, digital thermometers, and many and sundry other appliances. The number of chips or bars which may be required in a visible light emitting diode are necessarily determined by the desired requirements of the article in which it is to be used. Thus, in calculators which provide for the addition, subtraction, multiplication and division of figures and, accordingly, require a decimal point as well as a computation of numerical figures consisting of large totals, a greater number of chip or bar segments are required.

---

1. A general description of the manner in which a monolithic integrated circuit chip is manufactured and/or processed is found in this court's

decision in the case of *Texas Instruments Inc. v. United States,* Cust.Ct., 475 F.Supp. 1183.

In the examination of the record herein, it is noted that in the pretrial joint memorandum signed by respective counsel and filed with the court prior to trial under the heading "Agreement On Issues," the following statement is contained:

> * * * Defendant agrees with plaintiff that should the Court find the classification as watch dials to have been erroneous, then the proper classification would be under plaintiff's claimed provision, item 685.70, TSUS, for electrical indicator panels and electrical visual signalling apparatus. [P. 3.]

In the stipulations entered into by respective counsel in open court at the time of trial, it was further agreed:

> (8) The imported merchandise comes within the description of electrical indicator panels.
>
> (9) The imported merchandise comes within the description of electrical visual signalling apparatus. [R. 4.]

In view of the determination previously made herein that the subject merchandise is erroneously classified under item 720.40, TSUS, it is abundantly clear from the record that the defendant is, accordingly, in accord with the plaintiff in respect to its claimed classification and that the plaintiff's burden of proof in connection therewith has been sustained. However, in order to assure that full recognition is given to the arguments of the defendant presented in its brief, the court is disposed to consider the same in light of the evidence adduced in this proceeding.

In its brief the defendant appears to base its reasoning on two premises, (1) that the function and purpose of the merchandise in question is to ascertain time; (2) that the merchandise in question is capable of use only in the solid-state digital watch of the plaintiff. From these premises the defendant concludes that the subject merchandise must be classified as a "dial." The court is of the opinion that such a conclusion is *non sequitur.* In the absence of an express definition of the term "dial" in the Tariff Schedules of the United States, it is incumbent upon the court to determine its common meaning as a matter of law. *Davies Turner & Co. v. United States,* 45 CCPA 39, C.A.D. 669 (1957); *United States v. O. Brager-Larsen,* 36 CCPA 1, C.A.D. 388 (1948).

From all of the testimony submitted in the within proceeding, as well as from an examination of relevant authorities, it is clearly recognized that the term "dial" has a specific common meaning as well as a distinct meaning in the horological industry. With special reference to timepieces, the term "dial" is defined by the following lexicographical authorities as follows:

> [T]he *graduated* face of a timepiece on which the time in hours and minutes and sometimes seconds is shown usu. by pointers or hands. [*Webster's Third New International Dictionary* 622 (1966) (emphasis added).]

> The face of a watch or clock *marked for hours, minutes, etc.;* also any *graduated* circular plate or face upon which anything is indicated by a pointer or needle, as in a steam-gage or mariners' compass, or lettered face-plate of a permutation-lock. [*Funk & Wagnalls New Standard Dictionary of the English Language* 699 (1952) (emphasis added).]

> Any *graduated* circular plate or face, as of a watch, clock, gage, mariner's compass, or radio receiving set. [*Funk & Wagnalls New Comprehensive International Dictionary of the English Language* 353 (1978) (emphasis added).]

> The plate fixed behind the hands of a timepiece, *marked with divisions and numerals indicating time* by the movement of the hands. [*The Jewelers' Dictionary* (3d ed. 1976) (emphasis added).] [2]

At the trial of this action, plaintiff's expert witness, Henry Fried, responded negatively when asked whether the subject merchandise, described as a DIS–611, constituted a watch or clock dial in the horological industry:

---

**2.** Plaintiff's expert horological witness, Henry Fried, described *The Jewelers' Dictionary* as "the Bible of the industry and incidentally, the only dictionary for the industry." (R. 121.)

*There is no dial upon which there are graduated numerals or reference points, there is no set of hands to move upon the reference points on the dial to give an indication of the time. [R. 123 (emphasis added).]*

Similarly, the unrebutted testimony at the trial indicated that the VLED display is neither advertised as, nor referred to in commerce as, a watch or clock dial. Rather, it is commonly known as solid-state digital "display" or "readout." [3]

The function of the subject merchandise to indicate or display time does not, *ipso facto,* cause such an article to be designated a "dial." Again, as stated in the companion case hereto, we are witnessing in the horological industry the utilization of a singular electronic device, unrelated to conventional timepieces or parts thereof, but possessing the capability of translating the time factor computed by the integrated circuit chip into an instantaneous, nonreoccurring visual display. Except for the total number of bar segments utilized, the function of the subject merchandise in the solid-state digital watch is identical to the device similarly constructed and used in a calculator to display the computation of numerical figures.[4]

The court, likewise, is unable to accept the argument of the defendant that the design of the subject merchandise, making it adaptable for use only in the solid-state digital watch of the plaintiff, causes it to be classified as a "dial." A limitation as to size or a limitation upon its visual computative capability does not serve to change its identity into a "dial" whose function, design and characteristics are entirely dissimilar. *See United States v. Colibri Lighters,* 47 CCPA 106, 109, C.A.D. 739 (1960).

The basic identifying characteristic of a watch or clock dial singular to the common and commercial meaning is the *presence on the article itself* of a series of graduations or reference numbers or points from which the passage of time can be ascertained, commonly in conjunction with a set of hands or pointers. The dial does not directly tell time. It enables the viewer to tell time by means of the relative progression of a marker (e. g., pointer or hands) over the various graduations or reference points. Time, in other words, is indicated by the present position of the marker with reference to where it has been and where it is going.

The DIS–611 VLED display incorporates none of these elements. There are no graduations or reference points from which the relative passage of time can be understood. When the appropriate button is pushed, an electrical impulse causes various segments of the bars on the display to light, thereby directly indicating by the precise numerical figures the immediate time of day. No relative progression from the past, to the present, and into the future is possible by comparison with permanent reference points.

■ From the entire record in this proceeding, the court is satisfied that the merchandise in issue is properly classified, as claimed by the plaintiff, as an indicator panel or a visual signalling apparatus provided by item 685.70, TSUS. Logical reasoning dictates that this device receive the same classification as possessed by all other light emitting diodes, similarly constructed and performing the identical function of visual display in connection with the respective requirements of the specific article in which they must have been incorporated.[5]

Let judgment be entered accordingly.[6]

---

**3.** *See* R. 49–53 (Van Beisen); R. 88–89 (Cardenas); R. 111–114 (Coup); R. 126–127 (Fried).

**4.** Such a comparison is well demonstrated in Plaintiff's Exhibit 28.

**5.** The Customs Service has classified visible light emitting diodes as well as liquid crystal diodes, incorporated in numerous other appli-

ances and articles, other than watches and clocks, as indicator panels or visual signalling apparatus under item 685.70, TSUS. Plaintiff's Collective Exhibit 35.

**6.** In its brief, the defendant urges for the first time that if the instant merchandise is not a "dial," then it is properly classifiable as other subassemblies for watch movements under

item 720.75, TSUS, or as subassemblies for clock movements under item 720.86, TSUS. Although the holding of this court in the instant proceeding as well as in the companion case of *Texas Instruments Inc. v. United States,* Cust. Ct., 475 F.Supp. 1183, precludes the acceptance of this contention, it, nevertheless, must be noted that the incorporation of the foregoing alternative claims in its brief subsequent to trial is belated. As previously noted herein, the record indicates that in the event the classification of the subject merchandise by the Customs Service as "dials" is determined to be erroneous, the Government agrees that the claimed provision of said subject merchandise under item 685.70, TSUS, as electrical indicator panels or visual signalling apparatus is appropriate and correct.