**BELFONT SALES CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 81–12–01724–S.**

United States Court of International Trade.

July 30, 1987.

Stephen R. Sosnov, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, Judith M. Barzilay and Paula N. Rubin, New York City, for defendant.

## OPINION

AQUILINO, Judge:

This case challenges Customs Service classification under TSUS item 715.05 ("Watches") of merchandise referred to collectively hereinafter as a quartz analogue watch or "QAW". Duties were assessed under item 716.27 or item 716.29 according to the widths of those QAW elements considered "watch movements" and under item 720.24 or item 720.28, depending on the composition of their cases. The plaintiff claims that the merchandise was dutiable as an entirety under item 688.45 ("Electrical articles and electrical parts of arti-

cles, not specifically provided for: ... Other").

I

In order for a timepiece to be classified as Customs did herein, it must contain a "watch movement". *Compare* TSUS Schedule 7, Part 2, Subpart E (1980) *with Texas Instruments Inc. v. United States*, 82 Cust.Ct. 272, C.D. 4810, 475 F.Supp. 1183 (1979), *aff'd*, 67 CCPA 59, C.A.D. 1244, 620 F.2d 269 (1980) [*"Texas Instruments I"*]; *Texas Instruments Inc. v. United States*, 82 Cust.Ct. 287, C.D. 4811, 475 F.Supp. 1193 (1979), *aff'd*, 67 CCPA 57, C.A.D. 1243, 620 F.2d 272 (1980); *and Texas Instruments Inc. v. United States*, 1 CIT 236, 518 F.Supp. 1341 (1981), *aff'd*, 69 CCPA 136, 673 F.2d 1375 (1982) [*"Texas Instruments III"*].

In *Texas Instruments I*, the Court of Customs and Patent Appeals agreed with the Customs Court that a watch movement "requires a mechanism for the transfer of motion". 67 CCPA at 62, 620 F.2d at 271. Since the timepieces at issue therein were found to have no parts that "transmit mechanical energy or transfer motion to or from any other part"[1], the CCPA upheld the trial court's determination that they did not contain a movement.

In its protest to the Customs Service, the plaintiff herein claimed that the QAW was improperly classified because

the electronic module and its housing do not incorporate the transfer of physical motion, and therefore do not constitute a movement within the intendment of the Tariff schedules [*sic*] of the United States.

At trial, the plaintiff presented one expert witness and ten exhibits in support of its position that the QAW does not contain a watch movement. Exhibit 4 describes the operation of a QAW as follows:

Oscillatory electric signals are produced exactly at 32,768Hz by an oscillator circuit consisting of a crystal oscillator and

C/MOS–LSI.[2] The oscillator circuit includes a trimmer capacitor used to adjust the rate and a fixed capacitor for stable oscillation.

In the frequency divider circuit, the 32,768Hz frequency is successively halved 15 times by a flip-flop circuit until an output pulse of 1Hz is obtained.

The drive circuit delivers alternately a positive and a negative pulse at one-second intervals to the drive coil on the pulse motor.

Upon receiving a pulse current on its drive coil, the pulse motor instantly makes an intermittent rotary motion along an angular distance of 60 deg. every one second.

Rotation of the pulse motor is transmitted to the train wheel to drive the second, minute and hour hands, and the calendar mechanism.

Plaintiff's expert, a second-generation watchmaker and former Customs Assistant Area Director for Classification and Value, opined that the merchandise at issue does not contain a watch movement since it does not have a balance wheel, a mainspring or an escapement. While recognizing that a QAW contains a stepping motor that is "part of the movement of the various wheels which subsequently move the face of the watch"[3] and a gear train, with several pinions, which moves the hands[4], the witness claimed that these elements of a watch were never known in the trade and commerce of the United States as a watch movement. *See* Tr. at 24.

This testimony is diminished, however, by the contents of an affidavit given by this same expert in *Texas Instruments III*, where he declared:

... It is my opinion that *the term, movement, is not limited to those articles which employ balance wheels and hairsprings to operate.* Indeed, in commercial parlance, the term movement refers to both the traditional balance wheel

---

1. 67 CCPA at 63, 620 F.2d at 271.

2. Signifies the electronic circuit.

3. Trial Transcript ("Tr.") at 30.

4. *See id.*

movement and to the electronic "module".[5]

In that case, the module at issue was incorporated in a quartz digital watch, a solid-state electronic timepiece which the court(s) found not to contain a movement. That position of this witness is hard to reconcile with his testimony in the case at bar. If one believes that the quartz digital watch entails a movement, it would seem *a fortiori* that the same person would consider the QAW, with its distinct moving parts, to have a watch movement.[6]

Defendant's witness, Henry B. Fried, a third-generation watchmaker, teacher, and an author in the field of horology, testified that the term watch movement refers to "the all-inclusive enclosure in the watch case when it contains mechanical elements". Tr. at 70. Those mechanical elements "[t]ransfer motion, visibly, physically, from the power source to the hands". *Id.* He pointed out that the QAW contains the following parts which are identical to those found in a mechanical watch:

> center pinion, center wheel, third wheel, fourth wheel, fourth wheel pinion, ... a cannon pinion, and hour wheel, minute wheel, minute wheel pinion, index wheel, clutch wheel, clutch spring, clutch and crown and stem and a spring, clock springs, fan dial and hands. *Id.* at 69.

Some of those wheels are also found in tuning-fork watches like the Bulova Accutron. *Id.* Mr. Fried disagreed with plaintiff's expert, who had testified that that timepiece does not contain a movement. The question of whether the Accutron, which apparently has been classified by Customs under Schedule 7, contains a movement seems to be analogous to the question as to whether the QAW contains a movement.[7] Mr. Fried testified that the tuning fork operates ... electrically. It is stimulated, so its tines vibrate, in its own natural frequency. The movement of the tines is wide enough, in its amplitude, so it can accept a pawl, mounted on any one of the tines, which, in close proximity to an index wheel, a tiny watch ratchet wheel with slanted teeth, ... will nudge it, at each oscillation of the tuning fork and become the motor, which turns all the wheels, eventually, to indicate time upon its dial and hands, through the dial and hands. *Id.* at 59.

While the Accutron contains an indexing wheel, third wheel, fourth wheel, minute wheel, hour wheel, intermediate wheel and setting wheels which are similar to those found in mechanical watches[8], like the QAW, it has no balance wheel or escapement. *See id.* at 26.

■ The trial court in *Texas Instruments I* determined that the quartz digital watch is

> [u]nlike the conventional watch containing a balance assembly or *the electromechanical watch containing a tuning fork in both of which a definite mechanical motion is transferred to other component parts within the movement* .... 82 Cust.Ct. at 279, 475 F.Supp. at 1187.

The QAW is similar to the electro-mechanical watch in that "mechanical motion is transferred to other component parts" in each. This fact thus distinguishes the QAW from the merchandise at issue in *Texas Instruments I* and leads this court

---

**5.** Affidavit of Feb. 6, 1981, para. 14 (emphasis added). *See* Tr. at 33.

**6.** The witness on redirect claimed that he had not been the author of the affidavit [*see* Tr. at 38] and that, at the time sworn to, he had explained to the lawyer who had drafted the language that the module could not be called a watch movement. *See id.* at 38 and 39. Furthermore, the witness pointed out that he "never called it a watch movement. I called it a movement." *Id.* at 39.

This court is not convinced of the attempted distinction between a movement and a watch movement, as the affidavit was clearly referring to a watch movement; it stated that manufacturers of the quartz digital watch refer

> to the "module" portion ... as a "movement," notwithstanding that it lacked the traditional balance wheels and hairsprings which transfer energy into motion. Affidavit of Feb. 6, 1981, para. 12.

**7.** Since classification of the Accutron is not at issue here, the court expresses no opinion as to the applicability of Schedule 7 to it.

**8.** *See* Tr. at 59 and 60.

to find that the QAW does contain a watch movement. This is not to say that the QAW (or the Accutron) have many of the parts that were described in *Texas Instruments I* as the "principle components comprising a *conventional* watch movement" [9], but the quantum of such elements is not conclusive as to whether nonconventional timepieces contain watch movements. *Cf.* P. Hood, How Time Is Measured 29 (2d ed. 1969) (describing the Accutron as an "unusual watch").

The plaintiff maintains that "Congress intentionally did not wish to include watch movements with other than the traditional balance wheel and hair spring in the classification of 'watch movements'". Plaintiff's Brief, p. 26. The legislative history does not support this position. While there was a proposal that would have segregated in the TSUS movements not regulated by a balance wheel and a hairspring from those regulated in the traditional manner, that text was deleted before the tariff schedules were adopted. Many importers opposed the proposal, which would have instituted a higher rate of duty for nonconventional movements and thereby "impose[d] an enormous handicap on the introduction of new technology in the watch industry". *Tariff Classification Study: Explanatory and Background Materials*, Sched. 7 at 730 (1960).

The plaintiff also insists that classification under Schedule 7 is improper since "quartz analog watches are electrical articles based on technology alien to the pre-1962 horological industry". Plaintiff's Brief, p. 41. While the QAW apparently was not in existence at the time the TSUS was enacted, tariff schedules do "embrace merchandise unknown at the time of their enactment". *Texas Instruments I*, 82 Cust.Ct. at 282, 475 F.Supp. at 1190. As explained by the court in *Smillie & Co. v. United States*, 12 Ct.Cust.App. 365, 367, T.D. 40520 (1924),

> the statute will be held to apply if the articles possess an essential resemblance to the ones named in the statute in those

particulars which the statute established as the criteria of the classification.

The QAW does possess a resemblance to the traditional analogue watch with a movement. Both have mechanisms that transfer motion to other component parts. They also have a similar outward appearance and contain a number of moving parts which are the same. Finally, plaintiff's characterization of the technology of the QAW as "alien" to the 1962 horological industry is at odds with the following testimony before the Tariff Commission by an importer:

> Clearly, the watch importing industry is not static. Our designs and technology evolve continually; and at the present time it is quite apparent to those of us in the watch business that new concepts will be developed at an increasingly rapid rate in the future. Frankly, we cannot tell you whether, 5 or 10 years from now, Benrus watches will be operated or regulated by a balance wheel and hairspring or by a tuning fork or by a synchronous motor or *by quartz crystals* or by an atomic particle or a radio signal or any number of other possibilities. Let me assure you that, in Switzerland and in this country, keen minds are at work on all these possibilities. *Tariff Classification Study, supra*, at 735 (emphasis added).

█ In light of comments of this nature made by several importers, this court cannot accept plaintiff's position that "only traditional watch movements, with a balance wheel and hair spring, were intended to be included in the watch movement provisions". Plaintiff's Brief, p. 24. That is, the court is not persuaded that the QAW does not contain a watch movement in view of the thorough analyses in the *Texas Instruments* cases.

## II

Notwithstanding the foregoing finding that the watches at issue contain movements, classification of the QAW under item 715.05, TSUS is incorrect in that the

---

**9.** 82 Cust.Ct. at 281, n. 6, 475 F.Supp. at 1189, n. 6 (emphasis added).

heading to items 716.27 and 716.29 requires the movements to be:

> Not adjusted, not self-winding (or if a self-winding device cannot be incorporated therein), *and not constructed or designed to operate for a period in excess of 47 hours without rewinding:*[10]

The defendant contends that the classification is appropriate, as the

> watches were designed to operate in excess of 47 hours without rewinding because *these watches were designed to operate without winding.* Logic dictates that a watch which cannot be wound in the first place, cannot be rewound. Therefore, this merchandise was properly classified under the provision for watch movements not constructed or designed to operate for over 47 hours without rewinding. Defendant's Brief, p. 16 (emphasis in original; footnote omitted).

The tariff, however, contemplates winding, as the prefix "re" means "again"[11]. To perform an act again, it has to have been performed in the past. *See, e.g., Union Wire Rope Corp. v. Atchison, T. & S.F. Ry. Co.,* 66 F.2d 965, 967 (8th Cir.1933) (" 'Reworking' ... means working again.... It means that the articles have been 'worked' before they reach the transit point, and that the tariff allows them to be there worked again"); *Zehring v. Brown Materials,* 48 F.Supp. 740, 743 (S.D.Cal. 1943) ("The prefix 're-' means 'again,' so that 're-tail' originally meant 'tell-again.' "). The court in *Texas Instruments III,* in addition to finding no movement in the quartz digital watch, also noted the fact that that watch had not been wound. *See* 1 CIT at 244, n. 3, 518 F.Supp. at 1346, n. 3.

The defendant refers to a 1931 decision by Customs that a battery-operated watch which had no mainspring and therefore could not be wound was not subject to the one-dollar additional duty prescribed by subparagraph 367(a)(5) of the Tariff Act of 1930 for watches "constructed or designed to operate for a period in excess of 47 hours without rewinding" because that provision was "intended to cover movements which must be wound, otherwise they could not be rewound". T.D. 44779, 59 Treas. Dec. 820 (1931). Thus, the battery-operated watch, which was otherwise clearly within the purview of paragraph 367, was only subject to the other duties thereunder. In contrast to the 1930 act, Schedule 7 of the TSUS directly tied the watch-movement provisions not only to "constructed or designed to operate for a period in excess of 47 hours without rewinding" per item 719, but also to "not constructed or designed to operate for a period in excess of 47 hours without rewinding" per the heading to the items apposite herein, *supra* page 1572, and apparently precluded the classification under those provisions of watches that are not rewound. As the defendant itself admits at page 16 of its brief, "a watch which cannot be wound in the first place, cannot be rewound".

Whether or not Congress was aware that it was precluding such watches from its movement provisions[12], "this court must ... apply the statute that Congress enacted". *Internor Trade, Inc. v. United States,* 10 CIT ——, 651 F.Supp. 1456, 1459 (1986). As the court reiterated in *Al Tech Specialty Steel Corp. v. United States,* 10 CIT ——, 651 F.Supp. 1421, 1425 (1986), "[i]t is an established principle of jurisprudence that where a statute's meaning is clear, that meaning will be controlling".

■ Having carefully analyzed TSUS Schedule 7, this court concludes that it does not cover the QAW, which does not entail rewinding, and classification thereunder by Customs was therefore incorrect.

---

**10.** Emphasis added. The evidence herein shows that the QAW is never wound and that battery life expectancy is one year or more.

**11.** For example, Webster's New International Dictionary of the English Language (2d ed. 1945) defines "re" at page 2070 as follows:

> 2. *Again;*—used chiefly to form words, esp. verbs, of action, denoting in general *repetition* (of the action of the verb), or *restoration* (to a previous state).... [emphasis in original]

**12.** The court notes in passing that the U.S. Tariff Commission had been alerted to this possibility. *See Tariff Classification Study: Explanatory and Background Materials,* Sched. 7 at 825 (1960).

### III

In their pretrial order, the parties stipulated "that if the merchandise is not classifiable under item 715.05, TSUS, then the proper classification is under item 688.45". The trial court in *Texas Instruments III* held that the quartz digital watch should be classified under this item, pointing out that it,

[i]n the same manner as the preceding item, 688.44, specifically relates to electrical articles using digital integrated circuits to produce sound, so under the claimed classification, item 688.45. "electrical articles * * *, other," the merchandise in question consists of articles using digital integrated circuits to produce time. 1 CIT at 245, 518 F.Supp. at 1346.

The same is true for the QAW, which also employs an integrated circuit for the measurement of time.

\* \* \*

In conclusion, the plaintiff has persuaded this court that Customs incorrectly classified the subject merchandise and that the correct classification is under item 688.45, TSUS. Judgment will enter accordingly.

### JUDGMENT

This consolidated case having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that the merchandise imported under cover of the entries that are the basis of this consolidated case is correctly classifiable under item 688.45, TSUS; and it is further

ORDERED, ADJUDGED and DECREED that the United States Customs Service reliquidate the aforesaid entries under item 688.45, TSUS at the rate of duty in effect at the time thereof and refund any excess duties paid, together with interest, as provided by law.