**A CLASSIC TIME, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**ACCUTIME WATCH CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**OMNI QUARTZ, LTD., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**F & K WATCH CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**EASTMAN WATCH CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**DELTA IMPEX WATCH CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**BRANDED TIME CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**ANCHOR TIME CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Slip Op. 96–161.

Court Nos. 90–09–00467, 90–09–00468, 90–10–00518, 90–10–00519, 90–10–00520, 90–10–00521, 90–10–00522 and 90–10–00523.

United States Court of International Trade.

Oct. 2, 1996.

Irving A. Mandel (Steven R. Sosnov and Jeffrey H. Pfeffer, Plainview, NY), for plaintiffs.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (James A. Curley); Office of the Assistant Chief Counsel, U.S. Customs Service (Jacob D. Diamond), of counsel, for defendant.

AQUILINO, Judge:

The defendant has interposed a motion to dismiss the above-encaptioned actions for failure to state claims upon which relief can be granted.

I

The complaints are essentially the same. Each alleges that the plaintiff named therein was an importer of electrical timepieces of the kinds at issue in *Texas Instruments Inc. v. United States*, 1 CIT 236, 518 F.Supp. 1341 (1981), *aff'd*, 69 CCPA 136, 673 F.2d 1375 (1982), or *Belfont Sales Corp. v. United States*, 11 CIT 541, 666 F.Supp. 1568 (1987), *reh'g denied*, 12 CIT 916, 698 F.Supp. 916 (1988), *aff'd*, 878 F.2d 1413 (Fed.Cir.1989). Each alleges that the U.S. Customs Service was aware at all relevant times of these adverse, classification decisions to the effect

that such merchandise was correctly classifiable under Schedule 6, Part 5 as opposed to Schedule 7, Part 2 of the Tariff Schedules of the United States ("TSUS"). Nonetheless, the plaintiffs allege as a first cause of action, to quote from the complaint filed in CIT No. 90–09–00467:

10. Customs forced the plaintiff importer to enter merchandise at the highest duty rates for reasons of administrative expedience and to deprive the latter of its right to interest on payments of increased and additional duties mandated by 19 U.S.C. 1505(b) and as intended by Congress.

11. Had Customs acted within the authority granted by the law and intended by Congress, it would have had to accept the entry documents as prepared by the plaintiff importer and at a later date demanded payment of duties Customs determined to be owing. Thus, the importer should be entitled to interest under the statutory scheme intended by Congress, or, for certain entries, the practice of deferred payment as recognized in [*United States v.*] *Heraeus* [*–Amersil, Inc.,* 671 F.2d 1356 (CCPA 1982) ].

12. Customs' bad faith in forcing the plaintiff importer to tender excess duties upon entry is a taking without due process of law in contravention of Amendment V of the Constitution of The United States.

The gravamen of plaintiffs' second pleaded cause of action is as follows, again to quote from the complaint cited:

15. Following the trial court decision in *Belfont,* ... contrary to the intent of Congress and in order to deprive the plaintiff importer of its property right to interest from the date of the filing of a summons in this Court and to avoid paying interest on duty refunds, in contravention of Amendment V of the Constitution of the United States, applicable laws and regulations, Customs extended and halted liquidation of all entries of electrical timepieces and ordered action on all administrative protests withheld where those protests challenged the assessment of the excess duties Customs forced the importer to tender at the time of entry. Said order was contained in an official Customs Service telex.

\* \* \* \* \* \*

17. ... [B]y refusing to liquidate entries and/or process the plaintiff importer's protests in the normal administrative fashion, Customs intentionally and unlawfully prevented the plaintiff importer from filing a Court summons and unreasonably deprived plaintiff of its property right to interest on duty refunds from the date the summons would have been filed in this Court.

While the defendant has styled its motion as one to dismiss this and the other complaints pursuant to CIT Rule 12–(b)(5), the motion contains two exhibits which are relevant to, but beyond, those pleadings within the meaning of that rule. On their part, the plaintiffs have responded with four relevant exhibits, in addition to a memorandum of law. In accepting these submissions, the court in accordance with CIT Rule 12(b) shall treat defendant's motion as one for summary judgment.

The defendant takes the position that there is no legal basis for recovery on either of plaintiffs' counts. As to the first, it would have the court conclude

from [19 U.S.C.] § 1504(a), the cases interpreting that provision and ... [19 C.F.R. § 141.103 (1988) ] that Customs acted lawfully, and within the statutory authority granted to it by Congress, when it determined the amount of estimated duty the plaintiff must deposit. Customs was not required ... to accept the amount of estimated duty the plaintiffs wished to deposit.

Defendant's Brief, p. 11. In response to plaintiffs' second cause of action to the effect that the Service unlawfully extended the period for liquidation of the entries and thus deprived them of interest, the defendant relies on an October 2, 1987 telex from Customs Headquarters to all Service district, area and port directors that they

ensure that, until further notice ...:

1. Entries of quartz analog watches and clocks, with dial and hand, should not be liquidated. Should any such entry be about to liquidate by operation of law, the

time to liquidate should be extended pursuant to 19 USC 1504(b)(1) with the appropriate extension notice;

2. Entries of such watches and clocks are required under the appropriate TSUS Schedule Seven (7) item numbers and duty rates;

3. Such entries are not processed under bypass procedures;

4. Any protests for such watch and clock entries are not processed until this issue is finally resolved....[1]

The "issue" referred to, as indicated in the preamble to this directive, was whether or not this court would rehear and reverse or amend its classification decision in *Belfont Sales Corp. v. United States,* 11 CIT 541, 666 F.Supp. 1568 (1987). The government's motion for such relief was denied on October 11, 1988 in an opinion reported at 12 CIT 916, 698 F.Supp. 916, the judgment pursuant to which was affirmed by the U.S. Court of Appeals for the Federal Circuit on May 23, 1989, 878 F.2d 1413.

According to the summonses herein, Customs thereafter liquidated the entries in the above actions.

## II

■ Recently, in another action for recovery of interest on excess duties demanded upon entry of merchandise, this court reminded the plaintiff therein that the U.S. Department of the Treasury and its Customs Service are responsible for enforcement of the Tariff Act of 1930, as amended, not the courts, which cannot "supply by creative interpretation the necessary clear directions that Congress omitted." *Travenol Laboratories, Inc. v. United States,* 20 CIT ——, ——, 936 F.Supp. 1020, 1023, (1996), *appeal docketed,* No. 96–1534 (Fed.Cir. Aug. 30, 1996), quoting *Kalan, Inc. v. United States,*

944 F.2d 847, 850 (Fed.Cir.1991), *cert. denied,* 503 U.S. 906, 112 S.Ct. 1263, 117 L.Ed.2d 492 (1992). Relying on the axiom that, in

the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award[2]

the court of appeals in *Kalan* concluded that the law governing Customs left

little doubt that excess estimated duties are refunded without interest. Neither section 1520(d) itself nor related sections 1505(a)–(c) clearly mandate the payment of interest on duties deposited at entry and subsequently refunded. Besides that, the sole statutory provision dealing directly with the refund of excess deposits [§ 1505(a) ] is silent about the addition of interest.[3]

The plaintiffs contend that their allegations are not similar to those in *Kalan.* They

allege that through threats and intimidation the Customs Service in New York forced them to tender duties at rates, and under tariff classifications, for wind-up watches under TSUS Schedule 7. Customs was aware that these importers had already prevailed in their challenges to Customs' classification of the LCD timepieces under those very same Schedule 7 provisions and that these same importers had been consistently challenging Customs' improper classification of the QAW's. Through threats and intimidation, with the goal of avoiding congressionally-mandated interest payments for refunds of increased or additional duties, Customs took the importers' moneys by refusing to process

1. Defendant's Exhibit B (certain letters and words lower-cased for ease of reading).

2. *Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986).

3. 944 F.2d at 850. In *Travenol* and also *World Forum Watch, Ltd. v. United States,* 20 CIT ——, Slip Op. 96–115, 1996 WL 422132 (July 23, 1996), the court recognized that the North American Free Trade Agreement Implementation

Act, Pub.L. No. 103–182, § 642, 107 Stat. 2057, 2205 (1993), had amended this statute to provide for accrual of interest on excess estimated duties from the date of deposit thereof but held that that provision does not apply retroactively.

According to the summonses herein, whatever duties are at issue had been proffered by the plaintiffs before this amendment became effective on December 8, 1993.

QAW entries unless improperly high duties were paid up front.[4]

However, even if this representation is accepted as true for the purpose of resolution of defendant's motion [5], the plaintiffs offer little to support their corollary that such conduct was contrary to law and the Constitution.

■ And the court concludes that there is little support. The statutes governing the Service are found primarily in title 19 of the United States Code, section 3 of which provides that the "Secretary of the Treasury shall direct the superintendence of the collection of the duties on imports as he shall judge best." Section 505 of the Tariff Act of 1930, as amended by the time of the entries at issue herein, provided that importers "deposit with the appropriate customs officer ... the amount of duties estimated by such customs officer to be payable thereon." 19 U.S.C. § 1505(a) (1983). This statutory discretion has been interpreted broadly by courts. *E.g., Nat'l Corn Growers Ass'n v. Baker,* 840 F.2d 1547 (Fed.Cir.1988); *Sucrest Corporation v. United States,* 31 CCPA 220, C.A.D. 275, 1944 WL 3668 (1944); *American Permac, Inc. v. United States,* 10 CIT 535, 642 F.Supp. 1187 (1986); *Central Commodities Corp. v. United States,* 6 Cust.Ct. 452, C.D. 514, 1941 WL 4770 (1941). And it has led to rules and regulations like the following:

**Authority of Customs Officers.**

(a) *Supremacy of delegated authority.* Action taken by any person pursuant to authority delegated to him by the Secretary of the Treasury, whether directly or by subdelegation, shall be valid despite the existence of any statute or regulation, including any provision of this chapter, which provides that such action shall be taken by some other person. Any person acting under such delegated authority shall be deemed to have complied with any statute or regulation which provides or indicates that it shall be the duty of some other person to perform such action.

19 C.F.R. § 101.2 (1988).

**Amount to be deposited.**

Estimated duties shall be deposited in an amount deemed necessary by the district director to sufficiently cover the prospective duties on each item being entered or withdrawn.

19 C.F.R. § 141.103 (1988).

None of this, of course, supplants the constitutional proscriptions of deprivation of property without due process or just compensation, but the court is unable to conclude that plaintiffs' first alleged cause of action entails a violation of those fundamental rights [6] or otherwise states a claim upon which relief can be granted.

### III

■ The Service's directive, contained in the Headquarters telex of October 1987 quoted above, refers to 19 U.S.C. § 1504. That section provided, in pertinent part:

**Limitation on liquidation**

(a) **Liquidation.**—Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise;

---

4. Plaintiffs' Brief, p. 5. The acronyms LCD and QAW stand for liquid crystal display and quartz analog watch, respectively.

5. *See, e.g., Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 *reh'g denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969), and cases cited therein. The court notes in passing that the defendant does not refute plaintiffs' allegation, except to argue that Customs is not guilty of bad faith, which it equates with fraud, deceit or other conscious wrongdoing for a dishonest purpose. *See* Defendant's Reply Brief, p. 5. *Compare id. passim with* Plaintiffs' Exhibits 2–4 *and D & M Watch Corp. v. United States,* 16 CIT 285, 294, 795 F.Supp. 1160, 1168 (1992) ("Customs was erroneously classifying all [QAWs] under TSUS Schedule 7 but making it known to the importers that that was the schedule to be entered under— or else").

6. *Cf. Bob Jones University v. Simon,* 416 U.S. 725, 747, 94 S.Ct. 2038, 2051, 40 L.Ed.2d 496 (1974) ("although the congressional restriction to postenforcement review may place an organization ... in a precarious financial position, the problems presented do not rise to the level of constitutional infirmities"); *Peking Herbs Trading Co. v. Dep't of the Treasury,* 17 CIT 1182, 1993 WL 453674 (1993).

(2) the date of the final withdrawal of all such merchandise covered by a warehouse entry; or

(3) the date of withdrawal from warehouse of such merchandise for consumption where, pursuant to regulations issued under section 1505(a) of this title, duties may be deposited after the filing of an entry or withdrawal from warehouse;

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record. . . .

(b) **Extension.**—The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer of record in such form and manner as the Secretary shall prescribe in regulations, if—

(1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;

(2) liquidation is suspended as required by statute or court order; or

(3) the importer of record requests such extension and shows good cause therefor.

The defendant relies on subsection (b)(1), as well as on 19 C.F.R. § 152.16(e) (1987) [7], but also claims it is

obvious from the telex ... that Customs extended the period of liquidation to await the outcome of the *Belfont* case, and "until this issue is finally resolved."

Defendant's Brief, p. 13, quoting Exhibit B.

In *Detroit Zoological Soc'y v. United States*, 10 CIT 133, 630 F.Supp. 1350 (1986), Customs had extended the period for liquidation in order to obtain internal advice from Headquarters as to the proper classification of the merchandise. In sustaining the extension, the court held that the

term "information," as it is used in the statute, ... should be construed to include whatever is reasonably necessary for proper appraisement or classification of the merchandise involved. When a request for internal advice of a classification decision is granted, the "information" required to make the appropriate classification includes that advice. An extension of liquidation is thus justified in such a case if additional time is needed to obtain the internal advice and to consider it before making the classification decision.

10 CIT at 138, 630 F.Supp. at 1356–57. More recently, this decision was cited with approval in *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 768 (Fed.Cir. 1993), wherein the court concluded that

Customs may, for statutory purposes and with the requisite notice, employ up to four years to effect liquidation so long as the extensions it grants are not abusive of its discretionary authority. Such an abuse of discretionary authority may arise only when an extension is granted even following elimination of all possible grounds for such an extension. There is, in sum, a narrow limitation on Customs' discretion to extend the period of liquidation.

In that case, the Service clearly was lacking information of the kind covered by section 1504(b)(1), *supra.*

Here, the matter is not as clear. Plaintiffs' goods entered after court decisions mainly adverse to Customs had been handed down over the better part of a decade. By then, the government simply was left to hope for reversal of the most recent judgment upon rehearing or appeal. While report of such result (which did not materialize) may not be exactly within the contemplation of Congress in the above statute, to allow judicial review to run its complete course before liquidation is not contrary to logic or orderly proceedings. That is, this court cannot conclude that the defendant violated its discre-

---

**7.** This regulation provided for judicial changes in classification, in part, as follows:

*Other decisions adverse to Government.* Unless the Commissioner of Customs otherwise directs, the principles of any court decision adverse to the Government ... shall be applied to unliquidated entries and protested entries which have not been denied in whole or in part and in which the same issue is involved as soon as the time within which an application for a rehearing or review may be filed has expired without such application having been made. . . .

tion by waiting. *See St. Paul Fire & Marine Ins. Co. v. United States, supra.*

■ Moreover, if the presumption of regularity referred to in *St. Paul*[8] were overcome in these actions, the plaintiffs would not be entitled to relief. Their summonses indicate liquidation (and thus recovery of the excess duties) before commencement of these actions. Their complaints pray only for interest on those duties, but as recited in part I of this opinion, the United States is immune from an interest award in the absence of express congressional consent thereto. *Library of Congress v. Shaw*, 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986). Such consent is found in 28 U.S.C. § 2644 for this Court of International Trade, but, on its face[9], that section provides only for interest on monetary relief, as opposed to what would amount to necessary, underlying equitable relief herein[10]. While Congress has also consented to recovery of interest on excess estimated duties from the date of deposit thereof, this court has concluded in *Travenol Laboratories, Inc. v. United States, supra*, the reasoning of which opinion is incorporated herein, that that consent, 19 U.S.C. § 1505(c) (1993), does not apply retroactively.

## IV

In view of the foregoing, defendants' motion to dismiss plaintiffs' complaints must be granted. Judgments will enter accordingly.

## JUDGMENT

### Court No. 90–09–00467

This action having been duly submitted for decision; and the court, after due delibera-

---

**8.** *See* 6 F.3d at 769.

**9.** The section provides:

**Interest**
If, in a civil action ... under section 515 of the Tariff Act of 1930, the plaintiff obtains monetary relief by a judgment or under a stipulation agreement, interest shall be allowed at an annual rate established under section 6621 of the Internal Revenue Code of 1954. Such

---

tion, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

## JUDGMENT

### Court No. 90–09–00468

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

## JUDGMENT

### Court No. 90–10–00518

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

---

interest shall be calculated from the date of filing of the summons in such action to the date of the refund.

**10.** For the plaintiffs to recover on their second alleged cause(s) of action, the court would have to deem their entries liquidated pursuant to 19 U.S.C. § 1504(a) and then deem protest and denial thereof and filing of summonses by certain times.

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

## JUDGMENT

### Court No. 90–10–00519

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

## JUDGMENT

### Court No. 90–10–00520

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

## JUDGMENT

### Court No. 90–10–00521

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

## JUDGMENT

### Court No. 90–10–00522

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

## JUDGMENT

### Court No. 90–10–00523

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.