## Case No. 15,433.

UNITED STATES v. HUTTON et al.

[10 Ben. 268;[1] 25 Int. Rev. Rec. 57.]

District Court, S. D. New York. Feb. 11, 1879.

RIGHTS OF MERCHANTS—CUSTOM-HOUSE PAPERS—POWER OF SECRETARY OF TREASURY TO MAKE REGULATIONS—DUTY AND POWER OF COLLECTOR —MANDAMUS—PRODUCTION OF PAPERS COMPELLED BY ORDER—BY BILL OF DISCOVERY—BY STAY OF PROCEEDINGS—REMEDIES AGAINST THE UNITED STATES AS PLAINTIFF.

1. In a suit brought by the United States to recover duties, the defendants, on proof by affidavit of a demand by their counsel on the collector of the port, for an inspection of the invoices, entries, warehouse bonds, entries for withdrawal and permits, and the custom-house memoranda of payment of duties on the same or in the books of the custom-house in which payment of the duties should be noted, if the same were paid, and of the collector's refusal to exhibit the same, and also on proof by affidavit that they had entrusted the money to make the payments to one of their clerks and that their own books and papers do not furnish means of ascertaining the amount of the duties as liquidated, nor what payments, if any, were made at the custom-house, and that the collector supported his refusal by reference to a regulation of the treasury department, forbidding any person not connected with the custom-house to inspect or have access to or to take copies of any custom-house paper, except upon written application to the collector, stating his personal interest in the application and providing for a statement to be made on such application to be submitted to the collector and by him furnished to the applicant, if deemed consistent with the public interest and necessary to the rights of individuals (said regulation being made under Rev. St. U. S. § 251, which authorizes the secretary to make regulations to promote the public convenience and security and to protect the United States as well as individuals from fraud and loss, and regulations not inconsistent with law to be used under and in the enforcement of the laws relating to raising revenue from imports, etc.); and on further proof by affidavit that the defendants could not safely answer the complaint without an inspection of these papers. the defendants having moved for a mandamus against the collector requiring him to exhibit the same or for other relief,—held, that any regulations made by the secretary under Rev. St. § 251, not inconsistent with law and fairly within its scope and purpose and not infringing upon any existing legal rights of individuals, have the force of law.

2. Such of these custom-house papers as belong to the merchant when delivered to the collector, as, for instance, invoices, continue his property, though required by law to be impounded at the custom house, and that he has a legal right to inspect them and also other custom-house papers relating to his transactions with the custom-house in respect to his importations, under reasonable restrictions.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

3. The regulation referred to, so far as it was calculated to preserve custom-house papers from improper and unauthorized inspection, and to provide a proper and orderly mode for the exercise of the right of access by the merchant having a special interest therein, is a reasonable regulation under Rev. St. § 251, and not inconsistent with law.

4. If construed to deny all access to and inspection of said papers by the merchant specially interested therein, it would be inconsistent with law and so far would be void, but it seems that such is not its necessary or proper construction.

5. Mandamus is a proper remedy to enforce such right of inspection if denied, but that the circuit and district courts of the United States have no original jurisdiction to issue the writ, but may issue the same in a pending suit under Rev. St. § 716, "if necessary for the exercise of their jurisdictions and agreeable to the usages and principles of law."

6. Under Rev. St. § 716, the writ could be issued, if in this cause under a lawful order of the court it should become the duty of the plaintiff to permit an inspection of the papers and the performance of that duty should be obstructed by the refusal of the collector to exhibit the same.

7. The remedy by mandamus, however, would not lie if the defendant has any other remedy to obtain the same relief.

8. The remedy generally open to a defendant to obtain inspection of books and papers is by bill of discovery, and after issue joined by order of the court on motion under Rev. St. § 724.

9. As this matter of the production of books and papers is expressly regulated by act of congress, it is not a matter in which by Rev. St. § 914, the practice of the state courts, which is broader and allows this relief before issue joined, is adopted.

10. The circumstance that the United States cannot be made defendant in a bill of discovery will not be allowed by the court to defeat a substantial right of the defendants which such bill of discovery would have secured to them.

11. Whether before issue joined and independently of statute the court could, on motion, compel the production of books and papers, quære.

12. In this case, as on the undisputed facts the defendants have a right to the production of the papers called for, and a bill of discovery will not lie, the court can and should stay the plaintiff's proceedings in the suit till their production, and in case of the refusal of the collector to exhibit them within a certain time limited by the court, that a writ of mandamus issue for their production.

13. The regulation above referred to does not make it unlawful for the collector to exhibit said papers under the order of the court nor to produce them in court under subpœna or at the request of the district attorney.

14. The collector was justified in refusing to exhibit the same to the defendants' counsel, no order of the court having been made for their inspection or production.

[This was an action at law by the United States against Benjamin F. Hutton and others, to recover duties on imported goods. Heard on motion for a writ of mandamus.]

S. L. Woodford, U. S. Dist. Atty., and J. D. Jones, Asst. U. S. Dist. Atty.

R. M. Sherman and John N. Whiting, for defendants.

CHOATE, District Judge. In this case, which is a suit at law to recover duties on goods imported by the defendants, they move for a mandamus against the collector of the port to obtain the inspection of certain custom-house papers, or, if that motion is not granted, for a stay of the plaintiff's proceedings. The complaint alleges the importation and entry of the goods, the liquidation of the duties and their non-payment. Before answering and professedly for the purpose of enabling them to answer, the defendants' counsel applied to the collector of New York for an inspection of the papers in the custom-house relating to these importations, especially the warehouse bonds, the entries for withdrawal and the permits, and the memoranda made on these papers or on other papers or books of the custom-house which show, or in the ordinary course of custom-house business should show, any payments made on account of duties on these goods. The defendants' affidavits show that they entrusted to one of their own clerks the money necessary for paying all duties on these imported goods, and that their own books and papers do not furnish them with the means of information as to the amount of the duties as liquidated or as to what payments in fact, if any, were made through this clerk at the custom house. The collector refused the inspection, and referred the defendants' counsel to a regulation of the treasury department which is as follows: "No person (not connected with the custom-house or treasury department) is to be allowed access to or permission to inspect, examine, take copies of or have copies furnished of or be advised of the information contained in any record, document, paper, letter or account belonging to the custom-house, except upon the following terms and conditions, viz: Upon application in writing to the collector, by any individual having a personal interest, setting forth the nature and object of the application and his interest therein, and specifying the particular information or data requested. Upon receipt of such application the collector will direct some suitable and competent person attached to the custom-house to make the requisite examination of the record, paper, letter or account, as the case may be, and prepare a statement in writing of the information called for, to be submitted to the collector who may, should he deem it consistent with the public interest and necessary to the rights of individuals, furnish the same to the applicant; but if he entertains any doubt as to the propriety of furnishing it he will report the matter for the direction of the department. All persons attached to the custom-house are expressly forbidden from communicating, either orally or otherwise, any information contained in the records or files of the custom-house to any person not attached to the customs or revenue, except such as may be necessary to aid merchants

and others in the regular daily routine of business passing through the custom-house. And any clerk or other subordinate officer employed in the custom-house, who may furnish information to private individuals or shall accept or receive any fee, reward or compensation other than that allowed by law, or shall accept any gratuity whatsoever for any services he may perform for any person which are not devolved upon him by law or regulations; any such clerk, subordinate officer or other person so offending will become subject to removal from office or employment and must be suspended from employment forthwith, and the collector, naval officer, appraisers or surveyor, as the case may be, is enjoined to report to the department the name of any person so offending for its directions." This regulation was made under section 251 of the Revised Statutes, which authorizes the secretary of the treasury "to make and issue from time to time such instructions and regulations to the several collectors, as he shall deem best calculated to promote the public convenience and security and to protect the United States as well as individuals from fraud and loss; he shall prescribe the forms of entries, oaths, bonds and other papers and rules and regulations not inconsistent with law, to be used under and in the execution and enforcement of the various provisions of the internal revenue laws, or in carrying out the provisions of law relating to raising revenue from imports or to duties on imports or to warehousing; he shall give such directions to collectors and prescribe such rules and forms to be observed by them as may be necessary for the proper execution of the law."

It is clear that any regulations made under this statute which are not inconsistent with law, and which are fairly within its scope and purpose, and which do not violate or infringe upon any existing legal rights of individuals, have the force of law. Aldridge v. Williams, 3 How. [44 U. S.] 29.

The argument for the defendants is that merchants, by reason of their special interest in the custom-house papers, which relate to their own importations, have a right to inspect and take copies of them; that especially, when sued by the government in respect to some obligation growing out of such importations, they have such right of access to these papers, when necessary to enable them to make their answer or prepare for their defence; that this regulation does not apply to such a case nor take away this right; that, if it is to be construed as doing so, it violates their legal rights, and so is not consistent with law; that the enforcement of this right of access to the papers can be secured when denied, by the writ of mandamus, if no other remedy is given therefor, and that the laws of the United States afford no other remedy, the provisions of statute for the discovery

of books and papers being inapplicable to suits in which the United States is a party, or, if applicable thereto, not extending to the compelling of a discovery of books and papers until after issue joined in the action; and that this court has power to issue the writ of mandamus in an action of which it has jurisdiction where the issuing of such writ is necessary to the exercise of the jurisdiction and agreeable to the usages and principles of law, and that the issue of the writ in this case is necessary to the exercise of the jurisdiction and agreeable to the usages and principles of law.

The statutes defining the duties of collectors of customs do not specify his duties in respect to the custody or mode of preserving the papers that are required to be lodged in his office or the records made therein, nor the rights and privileges of other parties in respect thereto. Rev. St. § 2621. From the nature of the documents and the relation of the government to the merchant to whose business these papers and records relate, and the necessity out of which such deposit of papers and the keeping of such records arise, the duties of the collector in regard to them, may, however, with certainty be deduced. Some of these papers are, notwithstanding their deposit in the custom-house, the personal property of the merchant, as, for instance, invoices which he receives from his foreign correspondent and which constitute his proper and original paper title or assurance of title to the goods. While the public good undoubtedly requires that these invoices should be impounded at the custom-house, yet this necessity does not affect in the slightest degree the ownership of the paper. And I think it would require a positive statute most explicit in its terms to take away from the merchant the right to inspect and take a copy of his own invoice in the custom-house. As to other papers in the custom-house relating to his importations, such as entries, bonds, permits, etc., the right of access to them may not be based on a strictly proprietary right, and yet they are the written memorials and the only ones (for no duplicates are delivered to the merchant) of business transactions between him and the government, which for safe keeping and for reasons of public policy are required to be kept in this public office. They appear to me to be public records in which the merchant has a special interest, which implies the right of access to them on his part, under reasonable restrictions as to their preservation and the proper and orderly conduct of the public business of the collector's office. Revenue laws should be construed, as far as is consistent with carrying into full effect their legitimate purposes and objects, so as to infringe as little as possible on existing private rights and to embarrass as little as possible merchants in the transaction of their business.

But besides the duty of preserving carefully these papers and records, subject to the exist-

ing rights of the merchant to whose business they relate, the collector is also, from the nature of the papers and of that public necessity which requires them to be kept at the custom-house, equally bound by his official duty to guard them against the prying or mischievous curiosity of parties having no interest in them. These papers are not public records in the sense of being placed in a public office for the information of all the world. On the contrary, they are papers relating to the private business of the merchant, which a public necessity, connected with the collection of the public revenues alone, requires to be entrusted to and kept by the government. Hence follows the duty of the government to preserve as confidential the secrets of business thus disclosed to it, so far as is consistent with that public necessity which alone led to their disclosure.

The regulation of the treasury department above recited was evidently intended to provide for, and is, in some respects, well adapted to meet this two-fold duty of the collector in respect to the care of the papers in his office, viz.: To secure to the merchant reasonable access to them, and to guard them against the impertinent or mischievous curiosity of unauthorized persons. It is claimed by the defendants that it unduly restricts the merchant in his right, under reasonable conditions, to inspect and take copies of the papers. Construed literally, indeed, it prohibits all inspection, by any one not connected with the government service, and permits only the delivery to the merchant of a statement of the contents of papers, or copies of them prepared by a subordinate in the custom-house. The right to see the papers themselves must often be quite as important to the merchant as the right to have such a statement or copies. Perhaps, however, the regulation, in view of the purposes intended to be subserved by it, may be construed so as to permit an actual inspection of the papers. If not, it seems in that respect to go beyond the authority conferred by the act of congress, and to be inconsistent with law, because it infringes upon existing legal rights. That the regulation, though strict, is entirely proper and legal in requiring a written application for access to or information concerning the papers, and in directing that the application should be made to the collector himself, and in forbidding under penalty of dismissal any subordinate to give such information, is evident enough. These regulations are not only reasonable, but in the interest of the merchants themselves, as guarding the secrets of their business against unwarranted intrusion.

That the writ of mandamus is an appropriate remedy to enforce any right of inspection of custom-house papers, which a merchant has, and which the collector may deny, cannot admit of question; but the district and circuit courts of the United States are not authorized by law to issue the writ of manda-

mus as an original writ. These courts are, therefore, powerless to give this relief for violation of this right of inspection, so far as it is simply the right of the merchant based upon a right of property or special interest in the papers. These courts, however, are expressly authorized "to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law." Rev. St. § 716. The question whether this statute includes the writ of mandamus, is settled by the authority of the supreme court, which has held the writ properly issued under this state to commissioners of a county to compel the levy of a tax which was necessary for carrying into effect a lawful decree of the circuit court. Com'rs of Knox Co. v. Aspenwall, 24 How. [65 U. S.] 383. And this case is conclusive authority that a mandamus against the collector is the appropriate remedy, in case, under a lawful decree or order of this court in this cause, it should become the duty of the United States to permit an inspection of these papers, and the performance of that duty should be obstructed or prevented by the refusal of the collector to permit the same.

The writ of mandamus, however, does not issue if the party has another remedy to obtain the same relief. However clear might be the absolute right of the defendants to inspect these papers, that absolute right would not avail them in this proceeding. Their right to relief here must rest on their rights as parties in the cause according to the usage and practice of the court, and the statutes, if any, regulating the subject matter. That the defendants have become involved in a lawsuit with the government, in relation to the duties to which these papers relate, cannot take away nor abridge any such absolute right. On the other hand, the necessity or convenience to them of the exercise of the right, if it exists, makes the denial of any such right, if it has been denied, a more flagrant act of injustice than it otherwise would have been. But by reason of the want of power to issue a writ of mandamus, except as is necessary to the exercise of jurisdiction, the court is powerless to enforce any such right otherwise than as it shall be necessary to the exercise of its jurisdiction, and unless according to the principles and usages of law the defendants can require it as parties to this action.

We are brought, therefore, to the question, What rights, if any, have the defendants, as defendants in this suit, to the inspection of these papers, and if any such right exists, how is it to be availed of and enforced? I think the defendants show that they cannot safely or properly answer the complaint of the government without an inspection of these papers. The right of one party in a suit to demand an inspection or copies of books and papers in the possession of the other, either for the purpose of preparing a pleading or of preparing for trial, has long been recognized as a right

which the courts should, in some form and under proper circumstances, enforce. Independently of statutory provisions, the right has generally been enforced by bringing a bill of discovery in chancery for the purpose. But to avoid the delay and expense of such a proceeding, statutes have been passed. both state and federal, substituting, for the bill of discovery, a proceeding in the action itself, by way of motion and order. The production of books and papers is, so far as the federal courts are concerned, regulated by Rev. St. § 724, as follows: "In the trial of actions at law the courts of the United States may, on motion and due notice thereof, require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery. If a plaintiff fails to comply with such order, the court may, on motion, give the like judgment for the defendant, as in cases of non-suit; and if a defendant fails to comply with such order, the court may, on motion, give judgment against him by default." In the recent case of U. S. v. Youngs [Case No. 16,783], it has been held that a motion for the production of books and papers may be made under this statute against the United States where it is the plaintiff. And in case such an order is made and not complied with, a mandamus in the suit will lie against the collector, or the court may non-suit the plaintiff. But this statute seems clearly to limit the remedy to cases in which issue is joined, one test of the statute to the right to a production of the books and papers being that they contain evidence "pertinent to the issue." I do not think, however, that this statute is to be construed as taking away any right to have relief by bill of discovery, except in cases where the new remedy, by motion, is given. The relief by bill of discovery covered many matters not provided for by this section, and bills of discovery are not abolished by it. Beardsley v. Littell [Id. 1,185]. The object of the statute was to give a more summary remedy in certain cases, not to take away any existing remedies. A bill of discovery would lie to obtain the production of books and papers to enable a party to draw his pleading, and I see no reason why that remedy should not now be open to the defendants, if it were possible for them to make the United States respondent in such a bill. This is a merely technical objection, and one which a court of equity certainly would not allow to defeat the substantial right of a party to a discovery. In the case of U. S. v. Wagner, 2 Ch. App. 582, an objection was made to a bill, brought by the United States to recover property formerly in possession of the so-called Confederate States, that some officer should be joined on whom as a co-defendant service could be made in case a cross-bill for discovery should be filed; but the judges were all of opinion that the objection

that such person was not joined in the bill, was not well taken, and that the fact that a bill of discovery would not be effectual against the plaintiff as sole defendant, would not defeat the defendant's right to a discovery, since the court could and should stay all proceedings, unless the plaintiff should name some person against whom the bill of discovery might be effectually brought. Lord Chelmsford says (page 590): "If the defendant wishes to obtain a discovery, and files a cross-bill for the purpose, he may apply to the United States to name some person from whom the authority sought for may be obtained, and if they refuse to furnish him with this information the court will be justified in staying the proceedings in the suit until the defendant's demands are complied with." And Lord Cairns says (page 595): "I apprehend that the only rule is that the person, state or corporation which has the interest must be the plaintiff, and the court will do the best the law admits of to secure to the defendant such defensive discovery and relief as he may be entitled to. The court can in all cases suspend relief on the original bill until justice is in this respect done to the defendant." A court of law, as well as a court of equity, can stay proceedings in a suit, to prevent injustice, and this case is a sufficient authority for staying a suit, if the defendant cannot get a discovery of books and papers, which by the usages and principles of law he is entitled to, by reason of technical difficulties in obtaining a discovery by bill against the plaintiff.

Rev. St. § 724, gives no remedy by motion and order until after issue joined. I think it excludes such relief before issue joined under the Code of New York, because, where the statutes of the United States have expressly provided the mode of practice, there the state practice is not adopted by section 914 of the Revised Statutes. Beardsley v. Littell [supra]. The defendants' right to compel the production of papers by motion independently of statute, especially before issue joined, must be considered doubtful, although there is some authority for it.

In England the practice seems to have been adopted by the common law courts of compelling the production, on motion, of papers which could be obtained by bill of discovery (Grah. Prac. 524, and cases cited), and in some cases in this country, such relief was given on motion. Bronson v. Kensey [Case No. 1,927]; Wallis v. Murray, 4 Cow. 401, and cases cited. But in New York, at any rate, the proceeding by bill of discovery was held, except in some early cases, the proper course until the matter was regulated by statute. Grah. Prac., ut supra. And see Birdsall v. Pixly, 4 Wend. 196.

But what necessity is there in the present case for a bill of discovery, even if that is the appropriate remedy? All the material facts which it would be the office of such a suit to ascertain are admitted. The exist-

ence of the papers; that they are in the custody of the collector; that they relate to the goods in respect to the importation of which this action is brought; that they show the liquidation of the duties—all these facts are admitted. The only fact denied is that there is any record of the payment of these duties. It is alleged in the moving affidavits and not denied that in the course of the business of the custom-house a memorandum of payment of duties is made on the warehouse bonds and other papers called for. Enough appears, therefore, which is not denied, to entitle the defendants to an inspection of these papers before they answer. I think, therefore, that a stay may be properly granted until the plaintiff shall permit an inspection of these papers, and that the defendants should be allowed twenty days after such inspection to file their answer.

The objection that the regulation of the treasury department makes it unlawful for the collector to exhibit these papers has no force. That regulation was not designed to provide for, nor to prevent or embarrass, or indeed in any way to relate to the production of custom-house papers as evidence in courts of justice. Its purpose is apparent on its face. It simply regulates their production or information respecting them to be furnished, on application of private persons claiming the right of inspection or information by reason of their special interest in the papers. It is matter of every day practice in this court for these papers to be produced on subpœna, both in suits brought by the United States and in suits between private parties. And the duty to produce them upon the order of the court for purposes of evidence or discovery is equally imperative, and not in any way affected or intended to be affected by this regulation. Among the duties of the collector of the customs is that of aiding the United States attorney in the prosecution of all suits for duties and for frauds upon the revenue, and there can be no question that it is his duty upon the request of the district attorney to produce in court any papers in the custom-house required for the proper prosecution of such suits. This is as clearly his duty as it is to produce them upon the subpœna of another party; and his constant practice in this respect shows that the practical interpretation put upon this regulation has not prevented the unembarrassed production of these papers in court for the purposes of justice. If, therefore, this action is stayed for want of the production of these papers it will, I conceive, be the official duty of the collector, in order that he may give that assistance which is due from him for the proper and diligent prosecution of the action, to furnish these papers to the district attorney or himself to exhibit them to the defendants.

As to the claim of the defendants that the collector should have complied with the demand of their counsel to see these papers, I am of opinion that, considering the claim as made on their behalf as defendants in this suit, the collector was not under any obligation to comply with it. It is for the court and not for the parties to determine whether justice requires an inspection or the production of papers, and until there is an order of the court giving such a right of inspection, or, as in this case, granting relief by a stay of the proceedings of the United States because of their non-production, which equally imposes on the collector the duty of exhibiting the papers, he is justified in refusing all applications for them by counsel for use in a suit, which do not conform to the regulations of the treasury department.

A stay of the plaintiff's proceedings is not a complete remedy. It may operate as a perpetual bar to the determination of the cause. If within a reasonable time such stay shall not have the effect of obtaining the discovery the defendants desire, I see no good reason why a mandamus should not issue against the collector. That is necessary to the exercise of the jurisdiction which is necessary to carry into effect the lawful orders of the court. And any attempted distinction between the issue of the writ against a ministerial officer not a party to the cause, to compel the performance of a duty made imperative by the decree of the court and necessary for the execution of that decree, and the issue of the writ to such an officer to compel the performance of a duty made imperative on him by the order of the court, and the performance of which is necessary to the progress of the cause, and the rendering of any judgment, would be too nice. Either case is within the terms of Rev. St. § 716.

Let orders be entered denying the motion for a mandamus, and staying all proceedings of the plaintiff in the action, until twenty days after the papers described in the petition have been exhibited to the defendants' attorneys. And in case such papers shall not be exhibited within ten days after the entry and service of this order, let an alternative mandamus in this cause issue to the collector, requiring him to exhibit said papers or show before this court on the next motion-day thereafter why a peremptory writ of mandamus should not issue.