**D & M WATCH CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 83–12–01775.

United States Court of
International Trade.

April 24, 1992.

Irving A. Mandel, Steven R. Sosnov and Jeffrey H. Pfeffer, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, James A. Curley, Atty., Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, New York City, Edward N. Maurer, Office of Asst. Chief Counsel, U.S. Customs Service, New York City, of counsel, for defendant.

## OPINION AND ORDER

AQUILINO, Judge:

Final judgment entered in the above-numbered action on May 7, 1990 and in 104 other, similar actions between April 1990 and December 1991 on behalf of various named plaintiff importers, including D & M Watch Corp., docketed in this Court of International Trade as 83–01–00040–S, 83–04–00548, 83–05–00723, 83–07–00957, 83–07–00986, 83–07–00988–S, 83–07–01058, 83–08–01243, 83–08–01246, 83–09–01287–S, 83–09–01289, 84–01–00008, 84–01–00128, 84–03–00424, 84–03–00428, 84–04–00473, 84–06–00848, 84–07–00957, 84–07–00972, 84–07–00982, 84–07–00986, 84–07–00988, 84–08–01117, 84–09–01323, 84–11–01567, 84–11–01568, 84–12–01794, 85–01–00058, 85–02–00162, 85–02–00165, 85–02–00227, 85–03–00368, 85–03–00443, 85–04–00501, 85–04–00573, 85–05–00729, 85–07–00996, 85–08–01012, 85–08–01013, 85–08–01071, 85–08–01073, 85–08–01117, 85–08–01118, 85–08–01119, 85–09–01156, 85–10–01523, 85–10–

01527, 86–04–00440, 86–04–00441, 86–05–00595, 86–05–00596, 86–06–00768, 86–06–00771, 86–06–00793, 86–07–00846, 86–07–00847, 86–07–00849, 86–07–00945, 86–09–01128, 86–09–01209, 86–11–01399, 86–11–01489, 86–12–01505, 86–12–01506, 86–12–01532, 86–12–01593, 87–01–00030, 87–01–00052, 87–01–00078, 87–01–00090, 87–01–00108, 87–02–00180, 87–03–00482, 87–03–00515, 87–03–00516, 87–03–00521, 87–03–00538, 87–03–00539, 87–08–00862, 87–08–00863, 87–08–00864, 87–08–00865, 87–08–00871, 87–09–00920, 87–09–00922, 87–09–00967, 87–09–00968, 87–09–00972, 87–10–01002, 87–10–01003, 87–10–01015, 87–10–01042, 87–11–01072, 87–12–01151, 87–12–01153, 88–02–00115, 88–02–00146, 88–04–00267, 88–04–00306, 88–04–00313, 88–05–00371, 88–07–00529, 88–07–00531 and 88–07–00532. Each of the judgments had been submitted to the court upon an agreed statement of facts and bearing the names of the respective lead counsel of record. Each provides *in haec verba:*

"This action, as prescribed by Rule 58.1 of the Rules of the United States Court of International Trade, has been stipulated for judgment on agreed statement of facts, in which the parties agree that the merchandise in issue on the attached schedule is limited to quartz watches having less than 17 jewels and their components identifiable from the invoices and other entry documents as watches, quartz analogue watches, quartz digital watches, watches incorporating a battery or components (cases, movements and bands) which are similar in all material respects to the merchandise in *Belfont Sales Corp. v. U.S.*, 666 F.Supp. 1568 (CIT 1987), *reh'g denied,* 698 F.Supp. 916 (CIT 1988), *aff'd* 878 F.2d 1413 (Fed.Cir.1989) or *Texas Instruments Inc. v. United States,* 518 F.Supp. 1341 (CIT 1981), aff'd, 69 CCPA 136, 673 F.2d 1375 (CCPA 1982) ... which records have been incorporated herein, are properly dutiable as entireties and classifiable as "electrical articles and electrical parts of articles, not specially provided for: Other." or as solid-state electronic timepieces under T.S.U.S. item 688.45 as modified by item 688.42 or 688.43, or under item 688.36, at the rate of duty in effect at the date of entry.

All other claims are abandoned. Batteries are not included.

It is hereby ORDERED that the Regional Commissioner at the port of entry shall reliquidate the entry (entries) at the rate of duty in effect at the time of entry and refund all excess duties paid, together with interest as provided by law.

BY ORDER OF THE COURT"

Appended to each judgment is a schedule of the entries and protests encompassed by the encaptioned civil action. Some schedules set forth entry numbers which have been annotated as "not stipulable" by counsel. The judgment in the above D & M action, for example, covers 20 entries, none of which was so marked prior to signing by the court.

Come now the plaintiffs, alleging that the defendant has refused, and continues to refuse, to reliquidate the scheduled entries in compliance with the court's final judgments. Upon receipt of a proposed order to show cause, an immediate hearing was held thereon in open court, during which counsel did not deny that the government did not comply with the mandates. The defendant was thereupon directed to show cause why an order enforcing the judgments should not issue pursuant to CIT Rules 7(e) and 63

1) compelling [it] to turn over all relevant entry papers to the Court; 2) compelling [it] to reliquidate the Customs entries included in the cases herein with refunds of duty together with interest; 3) adding to the Schedules attached to the Judgment Orders all entries represented by Customs as "missing" but found to be available; 4) compelling [it] to search for all entries initially reported by Customs as missing and not yet found, for subsequent addition to the Schedules; and 5) to pay reasonable counsel fees necessitated by this proceeding.

The defendant was also restrained temporarily from disposing of or removing the

entry papers covered by the final judgments.

A hearing in conformity with Rule 63 commenced on April 3 and concluded on April 13, 1992. This opinion represents the court's findings of fact and conclusions of law.

I

■ As recited in the judgments, they are based on *Belfont Sales Corp. v. United States,* 11 CIT 541, 666 F.Supp. 1568 (1987), *reh'g denied,* 12 CIT 916, 698 F.Supp. 916 (1988), *aff'd,* 878 F.2d 1413 (Fed.Cir.1989). In that test case within the meaning of CIT Rule 84, this court had found, among other things, that a quartz analogue watch or "QAW" does contain a watch movement when viewed in the light of *Texas Instruments Inc. v. United States,* 82 Cust.Ct. 272, C.D. 4810, 475 F.Supp. 1183 (1979), *aff'd,* 67 CCPA 59, 620 F.2d 269 (1980), *Texas Instruments Inc. v. United States,* 82 Cust.Ct. 287, C.D. 4811, 475 F.Supp. 1193 (1979), *aff'd,* 67 CCPA 57, 620 F.2d 272 (1980), and *Texas Instruments Incorporated v. United States,* 1 CIT 236, 518 F.Supp. 1341 (1981), *aff'd,* 69 CCPA 136, 673 F.2d 1375 (1982), but had concluded that such a timepiece was properly classifiable under Schedule 6 to the Tariff Schedules of the United States, specifically item 688.45, as opposed to TSUS item 715.05, upon which the defendant had relied in imposing duties. The courts in the last of those Texas Instruments cases had reached the same conclusion with regard to quartz digital watches.

The Court of Appeals for the Federal Circuit issued its mandate in *Belfont* in June 1989, by which time hundreds of actions had been suspended under that test case pursuant to CIT Rule 84(a). In accordance with Rule 85, a suspension disposition calendar was then established for those actions for a period of 90 days, and all of the plaintiff importers were so notified in September 1989. On its part, the defendant responded with a letter to the court dated October 5, 1989, indicating that "about 600 cases" had been suspended under *Belfont* and stating:

We are advised by the Customs Service that marking of the entry papers will not be necessary for merchandise that entered through the Port of New York. However, for entries through other ports, marking will be necessary. It will also be necessary for the Government to determine whether the duties were paid in a timely manner for all entries, and the protests and summonses were timely filed.

Many cases have a large number of entries. Missing entries will have to be reconstructed before they can be stipulated. Based on our past experience with similar large disposition calendars, we estimate that between one and two years may be necessary to dispose of all stipulable cases and entries we expect to receive.

Counsel for certain plaintiff importers tended to agree that more than 90 days would be needed to process the actions to judgment off the suspension disposition calendar. Motions for extensions of the time and concomitant scheduling conferences between counsel and the court ensued. Some motions were denied. *E.g., E. Gluck Corp. v. United States,* 13 CIT 922, 1989 WL 131307 (1989). Some actions were dismissed. *E.g., Fada Industries, Inc. v. United States,* 14 CIT ——, Slip Op. 90–89, 1990 WL 133203 (Sept. 7, 1990). In others, extensions were granted, but only upon adequate showings "that counsel ha[d] conducted 'reasonable inquiry' of the kind contemplated by CIT Rule 11 and that, after such review and consideration, the Rule 1 goal of a just, speedy, and inexpensive determination of every action would be furthered by grant of an extension of time", to quote the admonition in *E. Gluck Corp.,* 13 CIT at 923 n. 2.

By late summer 1990, the court had entered final judgments agreed to by both sides in some of the actions enumerated above. However, by that time the court had also received copies of correspondence sent by plaintiffs' counsel to the defendant, complaining about the processing of them by Customs, alleging, among other things, on August 31, 1990 that the Service was "still losing an extraordinary number of

analogue watch and other entries" and on September 10, 1990 that "Customs is again demanding that the importer reconstruct these entries based solely on the unwarranted threat that no duty refunds will be issued" [emphasis deleted]. Those accusations led to a conference in chambers on October 2, 1990, at which plaintiffs' counsel appeared with draft complaints for their actions in hand, ready for filing as a means under Rule 85(c) for removal from the suspension disposition calendar within the period set by the court. Defendant's counsel protested however that removal and then joinder of issue would not be necessary; further extension of time on the suspension calendar would enable the parties to achieve stipulations in the actions. *Cf.* plaintiffs' Exhibit 5. The time was thereupon extended, and stipulations were in fact signed and sent to the court.

Final judgments in the form submitted were duly executed, but the plaintiffs now prove that those orders have not necessarily led to reliquidation of the listed entries.

## II

Indeed, as was true in response to the original application for an order to show cause, at the lengthy hearing on plaintiffs' motion for relief the defendant neither denied nor otherwise sought to refute the gravamen of the complaint that Customs had not and would not reliquidate entries on the schedules attached to the judgments.[1] The defense now presented is that the Service had a responsibility, if not a right, to scrutinize each and every such entry, as reflected in whatever papers were available, to determine if quartz analogue or quartz digital watches were in fact part thereof and thus subject to reliquidation in the light of the cited, controlling test cases. If the reliquidators assigned to the task could not make such an affirmative deter-

mination, essentially that was the end of the matter.

The evidence adduced at the hearing indicates that this approach has been taken only for New York entries—under the auspices, and at the direction, of the Chief of the Residual Liquidation and Protest Branch in the Region, Lawrence Ryan, apparently in consultation with other members of the Customs Service, including an attorney. In any event, he testified that his approach was going to be "totally different"[2]:

> I recognized that this case was going to be different than all other cases—just about any case, to my knowledge. It was going to be different, and I ordered my staff to begin using ... a form letter [of denial of reliquidation].
>
> \* \* \* \* \* \*
>
> The difference here—usually under a stipulation the entries are green inked ... [and s]uch ... items marked ... will be issued a refund.
>
> We can go into the entry documents and we'll see the green inkings. And there I would have an understanding that there was an agreement ... to give a refund on those items.
>
> Here, we had no such green inkings. This, to my knowledge, to my understanding, ... was going to be a totally different process.
>
> \* \* \* \* \* \*
>
> Generally, in a stipulation procedure my office ... receives entry documents from the court. In there, attached to those documents, is a proposed agreement.... [M]y office then transmits those documents to, generally, an import specialist; that person who is going to be doing the review. The import specialist will look at the entry documents, will look at what is proposed, and where he finds that he can agree, he will, in green

---

1. Copies of most of them were produced at the hearing and received in evidence together and with various attachments as plaintiffs' gross exhibit 1.

2. Witnesses for the plaintiffs indicated that they had never experienced such an approach in 25

or more years of working for or with Customs. Hearing Transcript ("Tr.") at 97, 261–62, 266–67. On his part, Mr. Ryan conceded that "this was a judgmental area that I was entering into." *Id.* at 160.

ink, mark off the items so the[re wi]ll be no misunderstanding later on. Those entries then are transmitted back to my office; back to the court.

Tr. at 151–52. Mr. Ryan proceeded to testify, and the court so finds, that he was responsible for "this new procedure" and

that procedure would be not to send the entries to the import specialist but to develop what I called the "generic stipulation," which would permit the processing through the court but then would place an obligation upon my staff and my office to review the entry documents and to make a determination similar to what the import specialist would have made under the normal procedure. The only distinction here is that this is being made after the court has ordered us to make a review, as opposed to prior.

*Id.* at 153–54. Nonetheless, the witness also testified that he had directed some four to six Customs employees to work with Department of Justice personnel in reviewing individual entries, including marking some off as "not stipulable", before any submissions to the court. *See id.* at 154–55.

As indicated, submissions on agreed statements of facts were presented to the court in each of the actions at bar, personally signed by lead counsel of record for both sides. An attorney for the plaintiffs, called by them as a witness at the hearing, testified that both sides had made every effort to be careful and accurate. *Id.* at 57, 76, 83. While the record shows that the plaintiffs proposed, it also shows, and the court finds, that the defendant dictated, if not composed, the ultimate terms of the submissions at issue. *See, e.g., id.* at 12, 13, 40, 74, 466, 469, 485–93. *Cf.* plaintiffs' Exhibit 17 and Tr. at 514–16. Indeed, the evidence on behalf of the defendant is clearly to the effect that the only reliquidation intended was for quartz analogue (or digital) watches. This is, and was, appropriate, given the precise holdings of the test cases. Hence, each of counsel's submissions stipulates:

1. Plaintiff is the importer of record and consignee of the merchandise covered by the entries listed in the attached schedule.

2. All protests listed in the schedule were timely filed, contested the classification and rates of duty assigned to the merchandise upon liquidation.

3. All liquidated duties were paid prior to the commencement of this action, and all other conditions precedent have been performed or have occurred.

4. The merchandise, if any, in issue in the entries listed on the schedule is limited to quartz analog watch movements, quartz analog watches, or quartz analog digital watches, as described in Paragraph 5, below.

5. The watch movements were classified and assessed with duty upon liquidation at the rates for watch movements under any of the provisions in items 716.09 through 716.45, TSUS, inclusive. Quartz analog watches and quartz digital watches were classified under Item 715.-05, TSUS, and duty was assessed upon liquidation at a rate derived in part from the rates for watch movements under any of the provisions in items 716.09 through 716.45, TSUS, inclusive.

6. The merchandise is similar in all material respects to the merchandise in *Belfont Sales Corp. v. The United States,* ... or *Texas Instruments Inc. v. The United States* ... [citations omitted].

7. Quartz analog watch movements are properly classified as electrical parts of articles under Item 688.40, 688.45, 688.43, or 688.42, depending upon the date of entry, and are dutiable at the rate in effect on the date of entry. Quartz analog watches are properly classifiable as an entirety as electrical articles under the same provisions and dutiable at the rate in effect on the date of entry. Quartz digital watches are properly classifiable as an entirety as solid-state electronic watches under item 688.36 and dutiable at the rate in effect on the date of entry. Batteries are separately dutiable as liquidated, and are not included as part of this stipulation for reliquidation. . . .

Defendant's Exhibit A. The submissions further stipulate and agree that the encaptioned actions were being "submitted for decision upon this stipulation ... limited to the articles and entries described [t]herein and described in the attached schedule[s] and all other claims are abandoned."

It was upon that representation that this court considered and decided to sign the judgments. The defendant now places great emphasis on the "if any" language of the submissions, paragraph 4,[3] while the plaintiffs counter that those words are not found in the judgments. This is true, although each judgment does state that "the merchandise in issue on the attached schedule is limited to quartz watches having less than 17 jewels and their components identifiable from the invoices and other entry documents as watches, quartz analogue watches, quartz digital watches, watches incorporating a battery or components (cases, movements and bands) which are similar in all material respects to the merchandise in *Belfont Sales Corp.*" etc.

However precise (or imprecise) the chosen language, on the part of the court there was no doubt then, and there is no doubt now, what the parties intended or what the law permitted. No employee of the government, including an officer of the Customs Service, which bears the historical burden of collecting and protecting revenues of the United States, has authority to cede them to private interests at his or her personal discretion. But it is equally true that such an employee does not have discretion to withhold property lawfully belonging to those interests.

Each of the judgments at issue
ORDERED that the Regional Commissioner at the port of entry shall reliquidate the entry (entries) at the rate of duty in effect at the time of entry and refund all excess duties paid, together with interest as provided by law.

Nothing in these decrees was left to the discretion of Customs[4], nor was there any intent on the part of the court to do so. This was the case not only because counsel did not make known in their formal submissions or otherwise that Customs had opted for a "totally different" approach, more importantly, a "decision of the Court of International Trade is final and conclusive, unless a retrial or rehearing is granted ... or an appeal is taken". 28 U.S.C. § 2645(c). Indeed, the Service itself has adopted a regulation, 19 C.F.R. § 176.31, which states:

Subpart D—Procedure Following Court Decision

§ 176.31 Reliquidation following decision of court.

(a) *Decision of U.S. Court of International Trade.* Except as provided in paragraph (c) of this section, an entry which is the subject of a decision of the U.S. Court of International Trade shall be reliquidated in accordance with the judgment order thereon at the expiration of 60 days from the date of the decision, unless an appeal or motion for a rehearing is filed. However, entries which are the subject of decisions of the court following a decision of the Court of Appeals for the Federal Circuit which involve the same issue, or which are based on submission of an agreed statement of fact, may be reliquidated immediately upon receipt of the judgment orders from the U.S. Court of International Trade.[5]

Of course, these rules of law do not preclude redress for judicial fallibility. CIT Rule 60(a), for example, provides for relief from a judgment possessed of clerical error, while subsection (b) contemplates other mistakes, inadvertence, excusable neglect, newly discovered evidence, fraud, etc. Hence, whenever the reliquidators encountered entries arguably beyond the un-

---

**3.** However, Mr. Ryan indicated that he did not actually receive the stipulations possessed of this precise language. *See* Tr. at 147. In any event, he informed plaintiffs' representative that "he could not go along" with the wording. *Id.* at 102.

**4.** Mr. Ryan conceded this point on the witness stand. *See* Tr. at 167.

**5.** The paragraph (c) referred to simply permits shortening of the time upon waiver of any right of appeal by the government.

derstood scope of the judgments, they had an open avenue to the court for relief.[6] Customs did not take it. Rather, form letters of rejection, which had never been used before, were sent to the plaintiffs, who reacted with vituperation and, inevitably, this extraordinary proceeding, which entailed taking of the witness stand by attorneys of record on both sides in their own defense.

Understandably, the plaintiff importers have believed that they prevailed in the test-case litigation over the last decade. They also believed that they had achieved settlements with the defendant in the actions suspended thereunder. That had also been this court's impression. The defendant denies this. It sought, and still seeks, refuge in the paperwork which piled up and/or was misplaced. To be sure, Customs is responsible for this phenomenon,[7] which its own witness characterized as "chaotic"[8] and a "nightmare". Tr. at 417. Indeed, at the very first conference after creation of the suspension disposition calendar in September 1989, counsel for the defendant convinced the court of the potential problems inherent in reliquidating the accumulated entries. The court appreciated then as now the burdens the Service faced and faces. Respect for those responsibilities was a main reason for the grants of extensions of time. When months passed before stipulations and judgments were finally submitted, the court assumed that the parties had been working together to get entry papers in order either for reliquidation or abandonment. It did not know or assume that the New York Customs Region had adopted a "totally different" procedure. Mr. Ryan indicated that he reached this decision with a view toward

the apparent magnitude of the process. But then that decision, essentially to await receipt of the judgments before making any definitive assessments, hardly justifies more than two years for the filing of those forms. Moreover, as returned, the precise language of the decrees did not permit the kind of *ex post facto* plenary decisionmaking engaged in by the reliquidators, none of whom apparently was very familiar with either the merchandise referred to or the underlying litigation. As stated in *Nozaki Bros., Inc. v. United States*, 41 Cust.Ct. 245, 250, C.D. 2048 (1958), the "collector, when reliquidating pursuant to court order, functions in a ministerial or clerical capacity only; he makes no voluntary decision and must follow the judgment of the court to the letter", citing *Smith v. United States*, 1 Ct.Cust.App. 489, T.D. 31527 (1911); *United States v. Kurtz, Stuboeck & Co.*, 5 Ct.Cust.App. 144, T.D. 34192 (1914); *Roessler & Hasslacher Chem. Co. v. United States*, 13 Ct.Cust.App. 451, T.D. 41347 (1926); *United States v. Edward M. Poons Co.*, 18 CCPA 283, T.D. 44451 (1930); *Wm. Wetstein v. United States*, 10 Treas. Dec. 531, T.D. 26848 (1905); *Formica Insulation Co. v. United States*, 60 Treas.Dec. 576, T.D. 45178 (1931); *Bullocks, Inc. v. United States*, 68 Treas.Dec. 99, T.D. 47809 (1935); *Frank P. Dow Co. v. United States*, 69 Treas.Dec. 336, T.D. 48163 (1936); *Los Angeles Trading Co. v. United States*, 1 Cust.Ct. 264, C.D. 62 (1938); *Fulghum & Co. v. United States*, 1 Cust. Ct. 284, C.D. 66 (1938); and *Walser Mfg. Co. v. United States*, 69 Treas.Dec. 1286, Abs. 34067 (1936). *Accord Schenley Distilleries, Inc. v. United States*, 40 CCPA 202, 207–08, C.A.D. 519 (1953) ("The collec-

---

**6.** By way of example, in March 1992 this court signed a stipulated judgment in another, unrelated action only to have the parties return now for certain amendments "to avoid any potential misunderstanding on reliquidation of the entries involved in this matter". Plaintiff's Consent Motion to Amend Judgment, *Leslee Sports Importing, Ltd. v. United States*, CIT No. 90–08–00380 (April 10, 1992). Moreover, judgments have been entered on behalf of other watch importers under *Belfont* without further ado and based on arguably less restrictive language than herein. *Cf.; e.g.*, plaintiffs' Exhibits 6 (*E. Gluck Corp. v. United States*, CIT No. 82–11–

01548 (Dec. 17, 1991)) and 7 (*Casio, Inc. v. United States*, CIT No. 88–05–00334 (Dec. 17, 1991)). In fact, numerous, additional stipulated judgments on agreed statements of facts have just been forwarded to the court *sub nom. E. Gluck Corp. v. United States* for entry under *Belfont* with expansive terms of the kind already so ordered in No. 82–11–01548.

**7.** *See, e.g.*, 44 U.S.C. ch. 31.

**8.** Tr. at 416.

tor had no further function to perform except the purely formal reliquidation, and the strictly clerical task of computing.... He had no decision to make").

Restating this well-settled, controlling principle, however, does not necessarily aid a reliquidator in following a judgment to the letter when the underlying documentation is unclear or sloppy or missing. The plaintiffs claim to have done the best they could in assisting the defendant, but they have not distinguished themselves and, in fact, may be in violation of the spirit, if not the letter, of 19 U.S.C. § 1508, which requires importers to make, keep, and render for examination and inspection entry documents of the kind needed for proper administrative action.[9] The plaintiffs do not gainsay this point, which they contend supports their corollary position that the judgments they agreed to were compromises. Indeed, inherent in a compromise under the duress of litigation is recognition by opposing parties of their less-than-preclusive positions.

The plaintiffs agreed to the marking of numerous entries as "not stipulable"—all in the handwriting of defendant's counsel, who admit reaching compromises in other Customs cases[10] but adamantly deny doing so herein. Not only does the defendant seek to hide behind its chaotic paper nightmare but also its *ad hoc* concepts of the imported merchandise, as gleaned from those documents available. For the best evidence, the goods themselves, had long since gone into commerce, leaving only cryptic descriptions of them on their entry papers. And the reliquidators were apparently instructed by the Service's national import specialist for watches and clocks, Lewis Piropato, to subject them to a restrictive reading. *Cf.* Tr. at 99 and 337–94 *passim.* In the above D & M action, for example, such a reading of the 20 stipulable entries led to their all not being reliquidated.[11] The form letter sent D & M to that effect and dated August 1, 1990 stated that, in "reviewing the entries ..., we found that the invoice description was insufficient to allow us to conclude that the watches imported were of the quartz analog variety" and demanded descriptive literature within 30 days that they were in fact of that variety or else the matter would be considered closed. When the plaintiffs challenged this decision herein, the defendant called upon Mr. Piropato, who had recently retired from duty, to review the D & M entry papers and as many others as the timing of the hearing would allow. He did so, but, contrary to the Service's August 1 letter, he apparently concluded that those papers did have descriptions sufficient for him to adjudge that all the timepieces referred to therein were "mechanical". *See* Defendant's Exhibit KK, pp. 48–52. In attempting to support this conclusion, Mr. Piropato referred to exhibits HH, II and JJ, which had first surfaced in 1986 at the trial of *Belfont* itself. In fact, those schematic depictions of timepieces and their mechanical movements assisted the court in opining that quartz analogue watches are also possessed of such movement. In other words,

---

**9.** Section 1508(c) requires that such documents be kept for a period not to exceed five years from the date of entry, most of which dates in these actions are now beyond this statutory limitation. Then again, such papers in the hands of importers would not necessarily have revealing notations from Customs on them.

**10.** The court is referred, for example, to a "compromise settlement" in *W.Y. Moberly, Inc. v. United States,* CIT No. 86–09–01137 (Aug. 9, 1990), defendant's exhibit OO. But defendant's exhibits S and T do not contain precisely those two words, rather language analogous to that at issue herein, yet reliquidation, as ordered, was apparently accomplished without any ado. *See*

*One Up Fashions, Inc. v. United States,* CIT No. 87–03–00509 (April 23, 1990).

**11.** In this action, a complaint dated June 26, 1985 and personally signed by a reputable member of the Bar not now before the court had been filed, alleging, among other things, that the merchandise "involved in this action consists of electronic quartz analog watches" and that the "subject watches are electrical articles" and "solid-state electronic watches." Defendant's Exhibit QQ. The testimony of the experienced Justice Department Attorney in Charge was that he expects, as does the court, lawyers to make reasonable inquiry into the facts alleged in a complaint before being drafted, served and filed. *See* Tr. at 509–10, 527–28. *Cf.* CIT Rule 11.

the mere mention of "mechanical" on the entry papers should not automatically exclude QAWs, particularly when, during those years, Customs was erroneously classifying all such merchandise under TSUS Schedule 7 but making it known to the importers that that was the schedule to be entered under—or else. *See, e.g.*, Tr. at 130–34, 265, 278, 321, 336 (the "quartz analog watch is part electronic, part mechanical"), 384–86. Moreover, Mr. Piropato agreed with the court that mechanical watches, those possessed of a mainspring and hairspring, among other traditional parts, essentially are no longer imported into the United States. *See id.* at 345–46. On the important issue of timing, he testified that, in but three days, he had been able to peruse approximately one third of all the entries at issue and prepare voluminous exhibit KK thereon. Finally, Mr. Piropato concluded that a number of the entries considered by him had indeed been QAWs, erroneously denied reliquidation on his own terms by his own trainees. *See id.* at 366. On their part, plaintiffs' own investigation at the Customhouse discovered entry papers which had been claimed to have been lost, thereby causing their abandonment prior to stipulation to the court.

### III

In the face of such evidence, mostly from agents of Customs itself, adduced after a decade of adverse adjudication of their position on the merits, it is difficult to decide that the defendant is not now in contempt of court, which, in actions such as these, has been defined as

> [a]ny act which is calculated to embarrass, hinder, or obstruct court in administration of justice, or which is calculated to lessen its authority or its dignity. Committed by a person who does any act in willful contravention of its authority or dignity, or tending to impede or frustrate the administration of justice, or by one who, being under the court's authority as a party to a proceeding therein, willfully disobeys its lawful orders or fails to comply with an undertaking which he has given.

Black's Law Dictionary, p. 288 (5th ed. 1979). In *Bullocks, Inc. v. United States*, for example, it was stated as follows:

> The judgment issued by this court ... was a lawful writ, process, order, rule, decree, or command of this court, and the collector's refusal to obey the same clearly constitutes an act of contempt of this court.

68 Treas.Dec. at 104. In that case, the government had refused to reliquidate upon its determination that the merchandise was not covered by the particular protest. The Customs Court, however, declared its decision conclusive on everyone and specifically directed the defendant to act accordingly:

> ... So long as jurisdiction ... resided in the collector, the law allowed him broad latitude as to the action he might take and a wide range of discretion, but once the collector had lost jurisdiction over the case he became nothing more than a mere ministerial officer to follow and obey the mandates of this court ... and it is not for him, once a decision has been rendered by this court, and the time for appeal therein has expired, to say whether or not the merchandise covered by a decision is or is not the merchandise covered by a protest. That is a matter which has already been determined by this court and is no longer open to so much as a suggestion from the collector.

*Id.* at 102. Similarly, in *Aris Gloves, Inc. v. United States*, 20 Cust.Ct. 102, 105, C.D. 1091 (1948), the collector argued that the judgment contained a latent ambiguity which was not discovered until the actual process of reliquidation, and that, when such an ambiguity exists in a judgment, "the collector has the right and power to construe and interpret the judgment in order to effectuate the intent of Congress". In response, the judge(s) stated:

> We are in complete disagreement with these contentions of the defendant. There can be no doubt but that when a judgment contains an ambiguity there is only one place where the judgment may be construed, or its provisions, directions, and orders interpreted, or the ambiguity eliminated—to wit, in the courts.

*Id.* at 105. The court noted that the stipulation was "freely entered into by competent representatives of the parties, and the case submitted" [12], and that, if there was a problem with the judgment, the solution was to seek amendment. Indeed, in view of the evidence adduced in the actions at bar, this court is constrained to recite further from the lead opinion in *Aris*, to wit:

> The proposition that the power of construction or interpretation of judgments may reside in one of the litigants to an action, or in its representatives, is so fundamentally absurd that the court is amazed that the defendant herein should seriously urge it.

*Id.* at 106. *Cf. American Grape Growers Alliance for Fair Trade v. United States,* 9 CIT 568, 622 F.Supp. 295 (1985). Perhaps it is the nature of our adversarial system, or the individual adversaries themselves, which cause such a proposition to be reasserted from time to time, but, whenever it is, it tends to diminish the dignity of and respect for judicial review and the resultant process, including the lawyers who as officers of the court are critical to the tried and true administration of justice.

At least the appearance of that dignity and respect, which transcends the protests and the personalities involved herein, must be restored. To this end, the defendant must comply with the final judgments by reliquidating entries listed on their appended schedules. As the Assistant U.S. Attorney General has recently opined, "much of the current criticism of our legal system results from just [such attempted] separation of process from the aims of justice that process is supposed to serve". Gerson, *When Lawyers Must Disclose,* N.Y. Times, April 9, 1992, at A25.

## IV

Included in the relief the plaintiffs seek is an award of their attorneys' fees and costs necessitated by this extraordinary proceeding. The defendant opposes any such award, and, prior to commencement of the hearing, it notified the court in writing that the parties had agreed that, if its opposition were overruled, the amounts for any award would be "determined at a later date."

This agreement comports with orderly procedure, particularly when the defendant still has to purge itself of its position in contempt. For the moment, the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, applies to actions in this Court of International Trade [13], pursuant to which parties in plaintiffs' position can recover their attorneys' fees and expenses and costs against the United States. Subsection (a) provides that costs, not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought against the United States or any agency or official of the United States acting in his or her official capacity in any court having jurisdiction of such action. Subsection (b) provides that a court may award reasonable fees and expenses to the prevailing party as aforesaid and that the United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award. Subsection (c)(2) states:

> Any judgment against the United States or any agency and any official of the United States acting in his or her official capacity for fees and expenses of attorneys pursuant to subsection (b) shall be paid as provided in sections 2414 and 2517 of this title, except that if the basis for the award is a finding that the United States acted in bad faith, then the award shall be paid by any agency found to have acted in bad faith and shall be in addition to any relief provided in the judgment.

And subsection (d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United

---

**12.** 20 Cust.Ct. at 107.

**13.** *See, e.g., Atochem v. United States,* 9 CIT 207, 210, 609 F.Supp. 319, 322 (1985), citing *Bar Bea*

*Truck Leasing Co. v. United States,* 4 CIT 137, 1982 WL 2237 (1982).

States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

■ To be "prevailing", a party must show it is more probable than not that the government would not have performed the desired act absent the litigation. *See, e.g., Public Citizen Health Research Group v. Young,* 909 F.2d 546, 550 (D.C.Cir.1990) (comparing this requirement to tort law "but for" causation); *Jean v. Nelson,* 863 F.2d 759, 765–66 (11th Cir.1988), *aff'd,* 496 U.S. 154; 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Certainly, after more than a decade of successful litigation, plus their clear and convincing ancillary proof presented now, the plaintiffs meet this requirement.

■ The government's failure to prevail, however, does not create a presumption that its position was not substantially justified. *See, e.g., Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988); *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 517 (1st Cir.1987); *Schuenemeyer v. United States,* 776 F.2d 329, 331 (Fed.Cir.1985). That standard has been interpreted to mean justified in substance or in the main, not justified to a high degree; the action must be justified to a degree which could satisfy a reasonable person and must have a reasonable basis in both law and fact. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *Morris Mechanical Enterprises v. United States,* 728 F.2d 497, 499 (Fed.Cir.), *cert. denied,* 469 U.S. 1033, 105 S.Ct. 503, 83 L.Ed.2d 395 (1984); *Bailey v. United States,* 721 F.2d 357, 360–61 (Fed.Cir.1983). The government has the burden of proving satisfaction of that standard. *E.g., Jones v. Lujan,* 887 F.2d 1096, 1098 (D.C.Cir. 1989); *McDonald v. Secretary of Health and Human Services,* 884 F.2d 1468, 1473 (1st Cir.1989); *Bonanza Trucking Corp. v. United States,* 11 CIT 436, 439, 664 F.Supp. 1453, 1455 (1987). Its "position" is both its litigation stance and the underlying administrative action or inaction. 28 U.S.C. § 2412(d)(2)(D); *Urbano v. United States,* 15 CIT ——, ——, 779 F.Supp. 1398, 1401 (1991), citing *Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1569 (Fed.Cir.1987), and *Traveler Trading Co. v. United States,* 13 CIT 380, 382, 713 F.Supp. 409, 411 (1989). *See also Jones v. Lujan,* 887 F.2d at 1097 (position comprehends both the United States' underlying action and its litigation posture); *Keasler v. United States,* 766 F.2d 1227, 1231 (8th Cir.1985).

Where the government's position rests, as here, squarely on the administrative rejection of final court judgments, its derivative stance is also without a substantially justified basis. In short, defendant's burden is not met. Indeed, it is *a fortiori* that contempt of court can never be substantially justified and can result in award of attorneys' fees. *E.g., Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967), citing *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 426–28, 43 S.Ct. 458, 465–66, 67 L.Ed. 719 (1923); CIT Rule 63 ("A reasonable counsel fee, necessitated by the contempt proceeding, may be included as an item of damage"). Furthermore, the EAJA provision for award of fees "to the same extent that any other party would be liable under the common law" has been interpreted to include bad faith dealings on the part of the government. *Cf. Bonanza Trucking Corp. v. United States,* 11 CIT at 441–42, 664 F.Supp. at 1457–58. The issue then is whether defendant's breach of faith with the judicial process in these actions is the equivalent of bad faith under 28 U.S.C. § 2412(b).

■ The "bad faith" standard in subsection (b) predates enactment of EAJA, which codified that exception to the long-standing so-called "American rule" of non-award of attorneys' fees to prevailing parties in lawsuits save when the loser has behaved "in

bad faith, vexatiously, wantonly, or for oppressive reasons". *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). These words signify more proof than is required to dispel substantial justification. *See, e.g., Barry v. Bowen*, 825 F.2d 1324, 1334 (9th Cir.1987) (bad faith standard "higher than the substantial justification standard"); *Lear Siegler, Inc., Energy Prods. Div. v. Lehman*, 842 F.2d 1102, 1117 (9th Cir.1988):

> ... An award of attorney fees under the "bad faith" exception is punitive, and the penalty can be imposed "only in exceptional cases and for dominating reasons of justice." *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir.), *cert. denied*, 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986) (quoting *United States v. Standard Oil Co.*, 603 F.2d 100, 103 (9th Cir.1979)). The burden is on the plaintiff to show the government's bad faith. *United States v. Ford*, 737 F.2d 1506, 1509–10 (9th Cir.1984). An award based on bad faith must be supported by specific findings that are not clearly erroneous or on sufficient evidence appearing in the record. *See Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir.1985); *Dogherra v. Safeway Stores*, 679 F.2d 1293, 1298 ([9th Cir.] 1982). If bad faith is found, a fee award is within the ... court's discretion.

A court may consider conduct both during and prior to the litigation, although an award may not be based solely on the conduct that led to the substantive claim. *Perales v. Casillas*, 950 F.2d 1066, 1071 (5th Cir.1992), citing *Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir.1989).

In *Brown v. Sullivan*, 916 F.2d 492, 496 (9th Cir.1990), for example, the court of appeals reversed a denial of fees under section 2412(b) on the basis of its own review of the "cumulative effect" of the actions taken by the defendant Secretary of the U.S. Department of Health and Human Services in denying disability benefits to an individual claimant. The court equated "bad faith" solely with the

> Appeals Council's failure to review a tape of an ALJ's hearing ... and other acts that caused delay and necessitated the filing and hearing of additional motions, *viz.*, the Secretary's delay in producing documents and in transcribing the tape.

*Id.* Similarly, in *Cazares v. Barber*, 959 F.2d 753 (9th Cir.1992), the court affirmed an award of attorneys' fees under section 2412(b) based on the "totality of the circumstances, prelitigation and during trial" of a case brought by a pregnant, unmarried high school girl not living with her child's father who had been denied admission to the Honor Society on those grounds. The district court enjoined the holding of any induction ceremony without the plaintiff's participation, whereupon the school called off the ceremony. That act was then equated with bad faith on the part of the government of the United States.

Certainly, much more is and has been at stake in the actions at bar, and it can fairly be said that the cumulative effect of more than ten years of litigation on the merits, as well as of this derivative litigation now underway and causing reliance on principles as old as the nation itself [14], is one of bad faith on the part of the defendant, forestalling further the day when "final" will actually be what the judicial process intends. Perhaps, award of reasonable attorneys' fees and expenses to the plaintiffs under 28 U.S.C. § 2412(b) will aid in realizing the interests of justice in these ac-

14. Chiseled into the wall of this Court of International Trade is President Washington's message to the first Supreme Court: "The stability and success of the National Government ... depend in considerable degree on the interpretation and execution of its laws". In line with this founding maxim, the "mother" lower federal court once stated in a Customs case:

> ... Revenue laws should be construed, as far as is consistent with carrying into full effect their legitimate purposes and objects, so as to infringe as little as possible on existing private rights and to embarrass as little as possible merchants in the transaction of their business.

*United States v. Hutton*, 26 F.Cas. 454, 456 (S.D.N.Y.1879) (No. 15,433).

tions.[15]

## V

If the evidence now of record implicated more than the New York Customs Region, the court would require relief directly from the Secretary of the Treasury and the Commissioner of Customs of the United States. However, all that seems necessary on the record developed is to direct the Chief of that Region's Residual Liquidation and Protest Branch, who stated under oath that he would now comply with instructions from this court[16], and the defendant and its other officers, employees, agents, servants, sureties and assigns, and they hereby are directed, to reliquidate within thirty (30) days of the date hereof each and every entry listed on the final judgments entered in the 105 actions enumerated above and not previously reliquidated or annotated by the parties as "not stipulable" and which would result in lower duties, with any resulting duty differentials to be paid to the plaintiffs, together with interest thereon as provided by law. At the end of the 30-day period, the defendant shall serve on the plaintiffs and file with the court a written report of its compliance with this opinion and order.

By the conclusion of this extraordinary proceeding, the plaintiffs may file application(s) in conformity with this opinion for award of resultant costs and reasonable attorneys' fees and expenses, together with proper proof of service on the defendant.

To the extent documents covered by the court's order to show cause are still required for purposes of this extraordinary proceeding, the order shall remain in full force and effect.

Except as stated hereinabove, plaintiffs' motion is hereby denied.

SO ORDERED.

---

**15.** The totality of plaintiffs' circumstances entitles them to such an award for this extraordinary proceeding, but they are hereby admonished that any applications therefor will be held strictly to the dictates of CIT Rules 11 and 68. Moreover, the Supreme Court has warned that a request for attorneys' fees should not result in additional major litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The "party who seeks payment must keep records in sufficient detail that

a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Id.* at 441, 103 S.Ct. at 1943 (Burger, C.J., concurring). *See generally Bonanza Trucking Corp. v. United States,* 11 CIT at 442–47, 664 F.Supp. at 1458–62, and 11 CIT 489, 669 F.Supp. 430 (1987).

**16.** *See* Tr. at 172–73.